Barbara KUMP, Plaintiff,

v.

XYVISION, INC., Defendant.

No. 88 CV 1249.

United States District Court, E.D. New York.

Feb. 2, 1990.

David M. Liva, Garden City, N.Y., for plaintiff.

Olwine, Connelly, Chase, O'Donnell & Weyher by Michael Twomey, Grace M. Healy and Catherine Botticelli, New York City, for defendant.

## MEMORANDUM AND ORDER

PLATT, Chief Judge.

In March, 1988, plaintiff Barbara Kump, a New York resident, commenced this action in New York State Supreme Court, Nassau County. Defendant Xyvision, a Delaware corporation with its principal office in Massachusetts, removed the suit to this Court on diversity grounds in April, 1988.

Plaintiff's complaint alleges four causes of action: 1) breach of employment agreement for failing to promote plaintiff to the position of account manager on April 1, 1987; 2) discrimination in employment on the basis of her sex in violation of New York State Executive Law § 296 for failure to promote plaintiff to the position of account manager before November 1, 1987; 3) discrimination in employment on the basis of her sex in violation of New York Executive Law § 296 for termination of plaintiff's employment; and 4) discrimination in employment on the basis of her pregnancy also in violation of § 296 for termination of plaintiff's employment. Plaintiff's complaint also requests attorney's fees under New York Executive Law and Title VII, SECTION 706, 42 U.S.C. § 2000e–5.

Defendant now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

For the reasons stated below, defendant's motion for summary judgment is granted with regard to the contract claim and denied as to the three discrimination claims. Further, plaintiff's request for attorney's fees is denied.

## FACTUAL BACKGROUND

Defendant, Xyvision, is a Delaware corporation with its principal offices in Massachusetts. It is engaged in the manufacture, sale, and servicing of computer systems used by businesses that require sophisticated document production. Plaintiff, Barbara Kump, was hired by defendant as a customer and sales support specialist in October, 1983.

In 1984, defendant split the customer and sales support functions. Plaintiff elected to be placed in sales support. In October, 1986, defendant's Vice–President for Sales and Support Services, Alphonse Lucchese, announced that he was instituting a new program in which people would be promoted to account manager from within the company and that plaintiff would be the first person so promoted. Later, Lucchese told plaintiff that since plaintiff would be assigned to either New York or Washington, she and her husband would have to relocate.

On December 5, 1986, Lucchese "gave" plaintiff a vacant territory in Philadelphia and assigned her to the Washington office. The promotion was to be effective January 1, 1987 but plaintiff's supervisor requested a postponement until April 1, 1987 so she could find a replacement for plaintiff. Shortly after the December 5th meeting, Lucchese resigned from defendant. Plaintiff concerned about her promotion communicated with the new national sales manager, Tom Heiber. On January 8, 1987, Heiber told plaintiff "All bets are on. Go ahead and look in New York and Washington."

On February 3, 1989, plaintiff again spoke to Heiber who confirmed the April 1, 1987 starting date and a base salary of $25,000 with a $1,000,000 quota. Heiber told plaintiff to look in Boston or Washington. Plaintiff explained that as a result of her previous conversations with Lucchese and himself, her husband had looked for and found a new job in New York and thus she was no longer as flexible in where she was able to relocate. Heiber's response was that he wanted her to report to either John DelFavero in Washington or George Wiseman in Boston because Bradley in New York was a "male chauvinist". Deposition of Barbara Kump, p. 59. He also told her that she should complete the sale of her house in Chicago.

On March 16, 1987, plaintiff had another meeting with Heiber. At this meeting, Heiber stated that a sales person position in the upstate New York area was open. He also stated that the company had created a new position in between sales support specialist and account manager, a Technical Sales Support Representative ("TSSR"). Heiber suggested that plaintiff take a TSSR position. At this meeting, he again stated that Bradley was a male chauvinist for whom it would be very difficult to work.

Plaintiff then met with Bradley who told her that the upstate New York position was not open. Following this meeting, plaintiff talked to Heiber who stated that the upstate New York position was open but suggested that she take a TSSR position to gain Bradley's confidence and so Bradley could get used to the idea of a woman sales person. Deposition of Barbara Kump, p. 74.

On March 18, 1987, plaintiff wrote Heiber a letter in which she accepted the account manager position covering the upstate New York area. In response, defendant's vice president of sales, Lloyd Sappington, called plaintiff and told her that the only position open to her was a TSSR position in New York City because he did not want her covering the upstate New York area from New York City.

Plaintiff claims that she was not anxious to accept the TSSR position because she had heard various of the defendant's employees, including the company's president Jim Sole state that Bradley was a male chauvinist who had difficulties dealing with women. However, since she had sold her house and her husband had left his Chicago job for a job in New York, she accepted the TSSR position in New York City in April, 1987.

On November 1, 1987, plaintiff was made account manager for Brooklyn, Queens, and Long Island. As an account manager, plaintiff's sales quota was $500,000. Plain-

tiff was also required to make ten face to face calls per week, perform 3.5 systems demonstrations per month, make two selling proposals per month with cost qualifications, and plan and conduct one open house for potential prospects once every three months. Company policy allowed only one open house per year for other account managers and other account managers were not required to conduct their own open houses. In early November 1987, she met with Bradley to discuss these requirements. At that time, Bradley explained that he knew she would have trouble meeting these requirements at first but that he expected the numbers would even out over the year.

On February 11, 1988, plaintiff advised Bradley that she was pregnant and would need a maternity leave in June of 1988. At this time, Bradley advised plaintiff that her employment was to be terminated the following day as part of a reduction in force. Plaintiff had not yet made a sale.

## DISCUSSION

### SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment if it determines that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The Second Circuit has explained that "in considering the (summary judgment) motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Insurance Company*, 804 F.2d 9, 11 (2nd Cir.1986) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The identification of material facts for summary judgment purposes "rests on the substantive law." *H.L. Hayden Co. of*

*N.Y. v. Siemens Medical Systems*, 879 F.2d 1005 (2nd Cir.1989) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1989)). Here, defendant moves for summary judgment of plaintiff's breach of employment agreement claim, which is governed by New York contract law, and plaintiff's sex and pregnancy discrimination claims, which are based on New York Executive Law § 296.

### Contract Claim

Defendant moves for summary judgment of plaintiff's claim of breach of employment agreement on the ground that there was no binding contract obligating defendant to promote plaintiff to an account manager position on April 1, 1987 and if a contract existed, it was orally modified and fully performed as modified.

Defendant bases the argument that no contract existed first, on the supposition that any representations by defendant were merely "suggestions" and as such they were not definite nor certain enough to constitute a contract. Second, these were oral suggestions and, therefore, unenforceable under the Statute of Frauds which requires contracts to be in writing. Third, these oral suggestions required no commitment running from the plaintiff to defendant and therefore lacked consideration.

In response to defendant's first supposition, plaintiff maintains that in October 1986, Al Lucchese made a public announcement that plaintiff was to be promoted to account manager based on her performance and under the pilot project to promote internal employees to the sales staff. Furthermore, in December 1986 and January 1987, the national sales manager, Al Lucchese and Tom Heiber respectively, told her that on April 1, 1987, she would be promoted to one of two possible locations. They also advised her of her salary and her sales quota.[1] Since a trier of fact could find that

---

1. Defendant cites *Burlington Coat Factory Wrse. v. Esprit De Corp.*, 769 F.2d 919, 924, for the proposition that plaintiff may not rely on hearsay allegations to oppose a motion for summary

judgment. Defendant's Reply Memorandum, p. 5. However, *Burlington Coat* does not stand for such a proposition but rather holds that "(one) cannot rely on *inadmissible* hearsay to oppose a

such promises were sufficiently definite to constitute a contract, believing the plaintiff, they might determine that contract did exist.

In response to defendant's allegation that as an oral agreement, it is unenforceable since it did not comply with the Statute of Frauds, plaintiff points out that the agreement was to be performed in four months and, therefore, is not required to be in writing. Under § 5–701(a)(1) of McKinney's N.Y. Gen'l Obl. Law, an agreement which, by its terms, is to be performed within one year from the making thereof does not need to be in writing. Because a trier of fact, believing plaintiff's claims, might find that an oral contract existed, its terms called for a promotion within the year and, therefore, did not have to be in writing and is not void for want of compliance with the Statute of Frauds.

In response to defendant's third supposition that the contract is void for lack of consideration on the part of plaintiff, plaintiff maintains that part of the agreement was that she must relocate. This part of the agreement, plaintiff claims, caused plaintiff and her husband to sell their home in Chicago and plaintiff's husband to change employers. Since consideration may be either a legal benefit obtained by the promisor or a "legal detriment suffered by the promisee", Calamari & Perillo *Contracts*, 134, a trier of fact who believes plaintiff might find that the contract was supported by adequate consideration.

In moving for summary judgment on plaintiff's claim of breach of contract, defendant argues that, even if a contract existed, defendant is entitled to judgment as a matter of law, because plaintiff expressly agreed to a modification of the contract and the contract as modified was fully performed. The modification, defendant claims, occurred when plaintiff accepted the TSSR position on April 1, 1987 and agreed to become an account manager in

November 1987. Under New York law, any agreement to modify a contract must be in writing and signed by the party to be charged. McKinney's N.Y. Gen'l Obl. Law § 5–1103. However, in *Rose v. Spa Realty Association*, 42 N.Y.2d 338, 397 N.Y.S.2d 922, 366 N.E.2d 1279 (Ct.App.1977) [hereinafter *Rose*], the Court recognized an exception to the prohibition against oral modifications in written contracts which do not expressly prohibit oral modifications. The Court stated that "if the parties agree orally to alter the contract, the oral agreement may be proven by partial performance of the oral agreement, but only if the performance is unequivocally referable to the oral agreement to modify." *Id.*, 397 N.Y. S.2d at 927, 366 N.E.2d at 1283–1284; *accord Grandonico v. Consortium Comm. Intgern., Inc.*, 566 F.Supp. 1288, 1291 (S.D. N.Y.1983).

Here, even assuming that there was an oral contract, there is no indication it expressly prohibited any modifications. In this case, it appears that the parties orally modified the contract and did not merely partially perform but rather fully performed the contract as modified. Plaintiff concedes that she agreed to defendant's making plaintiff a TSSR on April 1, 1987 if it made her an account manager by November 1, 1987. Deposition of Barbara Kump, 85–86, 90, 93, 107. This full performance of the contract as modified by the parties is "unequivocally referable to the oral agreement to modify" since their conduct "was not compatible with any option in the [original] agreement." *Rose, supra* at 397 N.Y. S.2d 927–928, 366 N.E.2d at 1283–1285.

Further, *Rose* gives another theory under which the statute requiring modifications to be in writing may not be invoked. In that case, as here, the theory of equitable estoppel prevents either party from evoking the statute when the parties "conduct was not otherwise compatible with the [original] agreement." *Id.* Here, as in

---

summary judgment motion." *Id.* (Emphasis added.)

Here, as elsewhere, plaintiff relies on out of court statements offered for the proof of the matter asserted, but since these statements are made by employees of defendant concerning

matters within the scope of the employment during the course of the employment, the statements may qualify as admissions of a party-opponent and, if so are not inadmissible hearsay. *See* Fed.R.Evid. 801(d)(2).

*Rose,* plaintiff "actively lulled the [defendant] into thinking the oral modification had been accepted." *Id.* This theory was also used in *Iravani Mottaghi v. Barkey Importing Co.,* 134 F.Supp. 719 (S.D.N.Y. 1955) where "defenses raised by the defendant ... [of] lack of consideration and Statute of Frauds are nullified by actual shipment and receipt of the goods in question ... Four years after performance of a contract by one party and receipt of the benefits by the other party is a poor time to ... attempt to rescind that agreement." *Id.,* at 729. Plaintiff is, therefore, estopped from now claiming that the original contract is in force.

In summary, while the issue of whether an enforceable contract supported by adequate consideration existed is a question of fact to be determined by the trier of fact, even assuming in favor of the non-moving party that such a contract existed, as a matter of law, it may be determined that plaintiff's contract claim must be dismissed because the original contract was modified and as modified fully performed.

*Discrimination Claims*

■ Defendant also moves for summary judgment of plaintiff's sex and pregnancy discrimination claims. While these claims are based solely on New York Executive Law § 296, the Supreme Court has held that "the elements of a successful employment discrimination claim are virtually identical" under Title VII and § 296 of the New York statute. *Kremer v. Chemical Const. Corp.,* 456 U.S. 461, 479, 102 S.Ct. 1883, 1896, 72 L.Ed.2d 262 (1982). In analyzing a suit brought under New York Executive Law § 296, both state and federal courts rely on federal Title VII case law. *See e.g. Vaughn v. Mobil Oil Corp.,* 708 F.Supp. 595 (S.D.N.Y.1989); *Rudow v. N.Y. City Com'n on Human Rights,* 123 Misc.2d 709, 474 N.Y.S.2d 1005 (Sup.1984); *Mtr. Pace Coll. v. Commission,* 38 N.Y.2d 28, 377 N.Y.S.2d 471, 339 N.E.2d 880 (1975).

■ In an employment discrimination cases, "the primary focus is always whether an employer treats an employee less favorably than other employees for an impermissible reason." *Montana v. First Federal Savings and Loan Association of Rochester,* 869 F.2d 100, 104 (2nd Cir.1989). While the plaintiff has the ultimate burden of establishing that he or she was the victim of discrimination, *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 112 (2nd Cir.1988), the courts have established that a plaintiff may prove discrimination by direct evidence, statistical evidence, or circumstantial evidence. *Montana v. First Federal Savings and Loan Association of Rochester,* 869 F.2d 100, 104 (2nd Cir.1989).

■ Since direct evidence of discrimination rarely exists, plaintiffs generally use circumstantial evidence as sanctioned by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), to prove discrimination. Under *McDonnell–Douglas,* a plaintiff may establish a prima facie case by showing 1) that she is a member of a minority; 2) that she applied and was qualified for a position for which the employer was seeking applicants; 3) that, despite her qualifications she was rejected; and, 4) that, after her rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. Once a prima facie case is established, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the rejection. *Id.* If the employer articulates some legitimate business reason, then the plaintiff must bear the burden of proving discrimination by showing by a preponderance of the evidence that the employer's reason is merely a pretext.

Here, defendant contends that it is entitled to summary judgment on all three of plaintiff's discrimination claims because plaintiff can not establish a prima facie case [2] and even if she could, defendant can

---

**2.** Defendant claims that plaintiff can not establish a prima facie case that she was not promoted in April, 1987, for discriminatory reasons because plaintiff had not met defendant's qualifications for the position of account manager. According to defendant, defendant only hired account managers with sales experience.

articulate legitimate business reasons for its actions [3] and plaintiff can not show that these reasons are a pretext.

### i) Failure to Promote Claim

■ Whether plaintiff can establish a prima facie case or whether defendant can articulate legitimate business reasons is irrelevant to plaintiff's claim that defendant failed to promote her in April, 1987 because of her sex. When there is direct evidence of discrimination, the plaintiff has no need for the *McDonnell–Douglas* formula. *See Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985); *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1112 (2nd Cir. 1988).

Here, plaintiff's claim that defendant discriminatively denied her promotion in April, 1987, is based on direct evidence. Plaintiff claims that she was told by defendant's national sales manager, Heiber, to take the TSSR position instead of the account manager position because Bradley, defendant's regional manager, was a male chauvinist who needed to get used to the idea of a woman. Since this constitutes direct evidence of discrimination based on plaintiff's sex, the *McDonnell–Douglas* formula is in-

applicable. As stated by the Eleventh Circuit in *Bell v. Birmingham Linen Service,* 715 F.2d 1552 (11th Cir.1983), "it would be illogical, indeed ironic, . . . to allow a defendant to meet direct proof by merely articulating, but not proving, legitimate, nondiscriminatory reasons for its action". *Id.,* at 1556–7.

In response to plaintiff's claim of discrimination, defendant has presented a number of legitimate reasons for not promoting plaintiff in April. However, as stated above, plaintiff has produced evidence that the defendant's action was based on plaintiff's sex. Thus, whether defendant's failure to promote plaintiff in April, 1987, is a result of defendant's illegal sex discrimination or defendant's legitimate business reasons, is a question of fact which can not be determined on a summary judgment motion.

### ii) Termination Claims

■ Defendant maintains that it is also entitled to summary judgment on plaintiff's claims that she was improperly terminated in February, 1988, on the basis of her sex and pregnancy. Since plaintiff has not presented any direct evidence [4] that she

---

Defendant maintains that plaintiff can not establish a prima facie case with regard to her wrongful termination because there is no causal connection between her sex or pregnancy and her termination. According to defendant, the Executive Committee which decided who was to be terminated kept employees who had made sales or were about to make a sale and did not know plaintiff was pregnant.

**3.** Defendant maintains that the reason plaintiff was not promoted in April, 1987, was because there was no position open in New York City and defendant did not want her handling a territory remotely.

Defendant also gives a legitimate business reason for plaintiff's termination in February, 1988. According to defendant, defendant had to make a 15% across the board cut after it suffered a loss of profits in the last quarter of 1987; the executive committee decided which account managers to be terminated on the basis of performance and potential, i.e., those account managers who had previously made sales and those who were on the verge of making a sale were retained.

**4.** Because plaintiff alleges that defendant failed to promote her in April, 1987, and that failure to

promote her caused her to be unable to meet defendant's allegedly legitimate requirements, plaintiff's sex discrimination in termination claim seems analogous to cases where concededly non-discriminatory seniority policies are alleged to be discriminatory because of prior discriminatory acts which prevented a plaintiff from meeting the seniority requirements. For example, in *Acha v. Beam,* 531 F.2d 648 (2nd Cir.1976), female police officers, who had been notified of layoff because of New York City's fiscal problems, alleged that the layoffs which were based on a neutral seniority system were discriminatory because women had been prevented from obtaining the seniority necessary to avoid layoff by defendants unlawful discrimination against them in the past. There, the Second Circuit held that "if a female police officer can show that except for her sex, she would have been hired early enough to accumulate sufficient seniority to withstand the current layoffs, then her layoff violates . . . Title VII, since it is based on sexual discrimination". *Id.,* at 654. The existence of later discrimination rests on a finding of earlier discrimination and while a plaintiff may use any of the available methods of proof to establish this earlier discriminatory act, it is this earlier discriminatory

was terminated on the basis of her pregnancy, we will utilize the *McDonnell–Douglas* formula.

Under the *McDonnell–Douglas* formula, plaintiff has the initial burden of establishing a prima facie case of discrimination by showing that she is able to meet each of the four requirements, i.e., she is a member of a protected class, that she is qualified for the job in question, that the employer rejected or discharged her despite her qualifications, and that the employer sought other applicants for the plaintiff's position. *Sorlucco v. New York City Police Department*, 888 F.2d 4 (2nd Cir.1989) (citing *McDonnell–Douglas, supra*, 411 U.S. at 802, 93 S.Ct. at 1824).

Here, the parties only dispute whether plaintiff has met the second requirement. Defendant argues that plaintiff was not qualified for being retained as an account manager, as she had not yet made a sale. Here, for the purposes of a summary judgment motion, where ambiguities are to be resolved in favor of the non-movant, *Knight v. U.S. Fire Insurance Corp., supra*, plaintiff can be said to have established a prima facie case when she raises a material question of fact as to whether she was qualified for the position.

In the present case, plaintiff has raised a material question as to whether plaintiff was qualified for account manager. Plaintiff contends that she was qualified for the position since she qualified under Lucchese's newly instituted in-company promotional program which was predicated upon previous job performance. Furthermore, plaintiff argues that once she acquired the position she performed the many job responsibilities other than making sales satisfactorily. Since the qualifications for

account manager may be as plaintiff argues and hence she would have met the requirements, plaintiff can be a said to have raised a material question as to whether she was qualified for the account manager position. Thus, for purposes of a summary judgment motion, plaintiff has sufficiently established a prima facie case for both sex and pregnancy claims.

Once the plaintiff has established a prima facie case, the burden shifts to the defendant to state a legitimate reason for the termination. *Id.* Here, defendant maintains that it had a legitimate business reason since all account managers who had not made a sale or were not about to make a sale had to be terminated in accordance with a 15% across the board cut necessitated by a poor fourth quarter in 1987.

After the defendant has established a legitimate reason for the discharge, the burden shifts back to the plaintiff to show that the defendant's stated reason for the discharge is pretexual. *Id.* In other words, the plaintiff ultimately must show that the apparently valid reason the defendant has advanced for discharging the plaintiff was not the true reason, but was a cover up for a discriminatory decision. *Id.*, (citing *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981)). Here, defendant argues that plaintiff cannot prove that defendant's reason for terminating her was pretextual. However, this argument also fails, because at the summary judgment level, a plaintiff does not have to prove that the reason for termination was pretexual. A plaintiff may preclude summary judgment by producing evidence from which the trier of fact reasonably could draw an inference of

---

act which controls whether the later act is discriminatory if the plaintiff can meet the "but for" standard. However, here plaintiff is unable to meet the "but for" standard, i.e., it is only speculation that plaintiff would have made the requisite number of sales had she been promoted in April.

Plaintiff's claim that she was terminated on the basis of her pregnancy is not analogous to the seniority cases because she does not nor can she claim that defendant's earlier refusal to promote her was based on her pregnancy. In the

seniority cases, the earlier act of sex discrimination actually constitutes the later sex discrimination; thus, for defendant's later act to be one of pregnancy discrimination, its earlier act of discrimination would have to be one based on pregnancy. Therefore, plaintiff's claim that she was terminated on the basis of her pregnancy will be analyzed as distinctly as possible from the alleged earlier act. The *McDonnell–Douglas* formula is thus the best vehicle for review of both plaintiff's sex and pregnancy discrimination claims in the job termination context.

discrimination. *Sorlucco, supra* (citing *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 898–99 (3rd Cir.1987), *cert. dismissed,* 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987)). *See also, Montana, supra* at 104, 105 (citing *Hagelthorn v. Kennecott Corp.*, 710 F.2d 76, 81 (2nd Cir.1982), where the central question was whether plaintiff had presented sufficient evidence to permit a reasonable fact-finder to conclude that age was a determinative factor in the employer's decision to terminate plaintiff.) Plaintiff is not required to show that her sex and pregnancy were the only factors in defendant's decision, nor that defendant's proffered reason for firing her was false, but only that its stated reason was not the only reason, and that her gender and condition did make a difference. *Cf. Montana, supra* (where the same standard was used in the age discrimination context).

Plaintiff here has presented sufficient evidence to create a triable issue of discrimination. A trier of fact might find that defendant's articulated reason for discharging her was merely a pretext for a discriminatory decision because there is evidence that defendant's presently stated reason was not the only reason for its decision to fire her. While defendant claims that it decided whom to layoff on the basis of the number of sales made plaintiff maintains that she was told by defendant's regional manager Bradley that the personnel department had made its decision on the basis of seniority. Similarly, while defendant claims that the decision as to who would be laid-off had been made prior to plaintiff's announcement of her pregnancy, and that the committee involved in making the decision did not know of her condition, plaintiff argues that her condition was recognized at work before she announced it in February.[5] Further, defendant's regional manager Bradley told her, at the time she was fired, that he had known she was pregnant since October, when she'd taken time off to get some tests done. Moreover, plaintiff claims she was told by another regional manager,

Vickie Hodges, that regional managers had worked extensively on the lay-off list, and had put together lists for submission to the executive committee, and that, thus, the decision had been made by people who either knew of her pregnancy, or had been given a recommendation by people who knew of her condition. Thus, the material disagreement exists as to the basis of plaintiff's termination and from this reasonable inferences may be drawn that defendant's stated reason is a mere pretext while plaintiff's termination was actually motivated at least in part on the basis of her sex or pregnancy. Furthermore, the direct evidence of the previous sex discrimination against plaintiff would further support a conclusion on the part of a fact-finder that plaintiff's sex played a role in her termination. Thus, although it is not for this Court to determine the truth of plaintiff's claims on the record before us, drawing all evidentiary inferences in favor of the non-movant, as must be done on summary judgment, plaintiff may well be able to prove she was discriminatorily terminated by defendant in violation of Title VII on the basis of her sex and pregnancy. Accordingly, summary judgment on plaintiff's claims is inappropriate, and the material questions raised by plaintiff's charges ought to be decided by the trier of fact at trial.

## ATTORNEY'S FEES

 Plaintiff has requested attorneys fees under New York Executive Law §§ 296, 297, and Title VII. However, the courts have found that the Executive Law does not provide for the awarding of attorney's fees. *State Commission for Human Rights v. Speer*, 35 A.D.2d 107, 313 N.Y.S.2d 28 (1970), *rev'd on other grounds*, 29 N.Y.2d 555, 324 N.Y.S.2d 297, 272 N.E.2d 884 (1971); *New York City Board of Education v. Sears*, 83 A.D.2d 959, 443 N.Y.S.2d 23 (2d Dept.1981).

While Section 2000e–5 of Title VII does provide for attorney fees, plaintiff's claims are not brought under Title VII. In sup-

---

**5.** Plaintiff was told by a TSSR, "I knew you were pregnant. You couldn't have looked that way and not be pregnant." (Deposition, p. 129.)

port of her claim to recover attorney's fees under Title VII, the plaintiff relies on *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980). In *New York Gaslight* the United States Supreme Court found that plaintiff could recover attorney's fees as the there was an express requirement in statute that claimant must pursue administrative remedies prior to commencing federal proceedings. Thus in *Webb v. County Board of Education,* 471 U.S. 234, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985) the U.S. Supreme Court did not award fees to the prevailing party fees for services rendered in optional proceedings not designed to enforce federal rights. The Civil Rights Attorney's Fees Awards Act contains language similar to that of Title VII's fee provisions and the two are generally construed similarly.

SO ORDERED.