**Ronna ZAKEN, Plaintiff–Appellant,**

v.

**Bonnie BOERER, Defendant–Appellee.**

**No. 461, Docket 91–7696.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 4, 1991.

Decided June 1, 1992.

Victoria De Toledo, Stamford, Conn. (Michelle de Garmeaulx, Casper & de Toledo, of counsel), for plaintiff-appellant.

Anthony M. Mahoney, Westfield, N.J. (Teresa A. Kazista, Mahoney & Mahoney, of counsel), for defendant-appellee.

Before: CARDAMONE, PIERCE, and MINER, Circuit Judges.

CARDAMONE, Circuit Judge:

Ronna Zaken brought the present suit against defendant Bonnie Boerer, owner of the now defunct Bonnie Boerer & Company, alleging that she was denied a bonus and her employment was terminated because she was pregnant, in violation of New York's Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* (McKinney 1982) and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* Following a jury trial her state law claims were submitted to the jury, which found in favor of the employer defendant. Adopting the jury's findings, the trial court ruled in defendant's favor on Zaken's Title VII cause of action. Judgment was accordingly entered for defendant.

On appeal appellant Zaken challenges as error the district court's adverse judgment on three grounds: the refusal to admit the deposition testimony of Toni Barr, a co-employee, that she was told plaintiff's predecessor, Robin Weinberg, was terminated because she was pregnant and that plaintiff was fired for the same reason; the limitation of appellant's testimony regard-

ing "daily sheets" that reflected her job performance as a sales manager; and the supplemental charge that purported to define the term "motivating role."

## BACKGROUND

Defendant Bonnie Boerer was the chief executive officer of Bonnie Boerer & Company and the owner of 98 percent of its stock. The company—which defendant had owned since 1983—designed, produced and sold women's specialty clothing. Bonnie Boerer herself designed the clothes that were manufactured by her Hong Kong corporation and sold through her New York City showroom, where plaintiff was employed. During its existence, defendant Boerer individually controlled almost every aspect of her business. In addition to design and production, she handled advertising and finances. She had ultimate decisionmaking power with respect to all corporate activities, including personnel decisions. Boerer made the final decision to terminate appellant's employment.

Appellant Ronna Zaken was hired in September 1988 as a sales manager of the company's large size clothing division in the company's New York office at a salary of $46,000 per year, with the promise of a bonus at the end of 1988. As a sales manager, Zaken was responsible for selling large size clothing to various department and retail clothing stores, and supervised two salespeople in her division as well as three road salespersons. Unbeknownst to appellant when she was hired, she replaced Robin Weinberg, the former sales manager of the same division, who had been discharged during the fifth month of her pregnancy.

Shortly after beginning her employment in September, Zaken learned that she was pregnant, and advised Alan Kohn of that fact in October. Kohn was plaintiff's supervisor and president of sales for the company's entire product line. Appellant planned to continue to work for as long as possible during her pregnancy, and then return to her position soon after her delivery. Kohn told plaintiff not to tell Boerer or anyone else at the company that she was pregnant, and suggested it would be best if he broke the news to defendant at a later time.

At the end of December 1988 Boerer—who had been in the Orient overseeing the manufacture of her product line since plaintiff's hire in September—returned to the New York office and became aware of plaintiff's pregnancy. While overseas defendant had been kept apprised of the performance of her sales staff through "daily sheets" detailing each employees' sales activities. When at the end of 1988 Zaken was not given her previously promised bonus, she asked Sanford Sessler, who had succeeded Alan Kohn in November as her supervisor and was then serving as the company's vice president of sales, why she had not received the bonus. Sessler told her that Boerer had decided she was "not qualified" for her sales position. Plaintiff testified that when she told Sessler that she believed defendant was discriminating against her because of her pregnancy, he replied "it doesn't help."

A month later, on January 24, 1989, Sessler advised plaintiff that defendant had made the decision to terminate her employment. Plaintiff was then five months pregnant, and upon inquiring why she was being fired, was told by Sessler that defendant had decided she was "not qualified" as a sales manager. Zaken testified that Sessler also told her he had fought to convince defendant not to fire her and that he would give her a recommendation letter. On February 13, 1989 he did so, stating that Zaken's "administrative skills, attention to detail, work ethics and ability to communicate were outstanding."

At trial plaintiff testified regarding her performance as a sales manager, and introduced the daily records upon which defendant had relied in judging her performance. She was allowed to explain the significance of many of the notations on these documents, but this testimony was ultimately limited by the trial court, which ruled that the daily sheets were going to the jury in their entirety and that further testimony detailing the information in them was therefore unnecessary.

Plaintiff's predecessor, Robin Weinberg, also testified at trial. She stated that she had been discharged by defendant Boerer when she was five months pregnant after being employed a little over one year. She declared that she had a very good sales record at the time of her termination and, prior to becoming pregnant, had received very positive comments from Boerer. Weinberg had received a Christmas bonus after working at the company only five months, and a raise after eight months with the company. She testified that after discovering her pregnancy, Boerer became cold and hostile, and terminated her employment a few months later. She also stated that at the time of her hiring interview, Boerer had asked whether she planned to have children, and stated that she hoped Weinberg would not become pregnant while employed at her company.

Plaintiff also sought to introduce the deposition testimony of Toni Barr, a former salesperson of defendant's. At her deposition, Barr had testified that Ed Newman, the company's then vice president of sales, told her that Robin Weinberg had been fired by the defendant because she was pregnant. In addition, Barr testified that she was told plaintiff was also terminated because of her pregnancy, but Barr did not identify the individual who made this statement. The trial judge refused to admit this deposition testimony, finding that it was not admissible against defendant in her individual capacity and that it was cumulative.

Bonnie Boerer insisted in her testimony that she fired plaintiff because she was not qualified to fill the position of sales manager. She stated further that Robin Weinberg had been terminated because of excessive absenteeism, low productivity, and dishonesty. In addition, testimony was introduced that of the approximately 30 people employed in the company's New York City showroom 24 were women, five of whom became pregnant during the course of their employment without loss of their positions. Defendant denied discriminating on the basis of pregnancy or making any derogatory remarks concerning any of her employees' pregnancies.

The district court submitted plaintiff's New York Human Rights Law cause of action to the jury, asking it to determine whether plaintiff's pregnancy was a determining factor in defendant's decision not to pay plaintiff a bonus and/or to terminate her employment. During its deliberations, the jury made several requests, including a request for the definition of "motivating role." The district court, over objection, instructed the jury that "[m]otive is what prompts a person to act." The jury returned a verdict in favor of defendant. The district court adopted the jury's finding that plaintiff had not shown by a preponderance of the evidence that pregnancy was a determining factor in defendant's decisions, and ruled in favor of defendant on plaintiff's Title VII cause of action.

## DISCUSSION

### I

We consider first the deposition testimony of Toni Barr respecting statements made to her concerning appellant's and Robin Weinberg's discharge from defendant's employ. Zaken argues these statements were admissible against defendant under Fed.R.Evid. 801(d)(2)(D). The trial court believed they were inadmissible against defendant Boerer in her individual capacity and in any event cumulative.

■ Rule 801(d)(2)(D) provides in relevant part:

A statement is not hearsay if [it] is offered against a party and is [made] by the party's agent or servant concerning a matter within the scope of the agency or employment ... during the existence of the relationship.

Considering first whether the statements were admissible against Boerer in her individual capacity, we observe that when a statement made by one corporate employee to another is sought to be introduced against a corporate employee, instead of the corporation, admission under Rule 801(d)(2)(D) depends on the relationship between the declarant and the defendant. *See United States v. Young*, 736 F.2d 565,

567 (10th Cir.1983) (per curiam), *rev'd on other grounds*, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). When the factors proving an agency relationship are present, the testimony should not be excluded simply because it is offered against a corporate employee rather than the company itself. *See United States v. Paxson*, 861 F.2d 730, 734 (D.C.Cir.1988); *United States v. Draiman*, 784 F.2d 248, 256–57 (7th Cir. 1986).

■ We examine therefore each statement testified to at Barr's deposition to determine whether the requisite relationship existed between the declarant and Boerer to make the statement admissible against Boerer in her individual capacity. With regard to Barr's testimony that Ed Newman—the company's then vice president of sales—told her that Robin Weinberg was fired because she was pregnant, the necessary relationship exists between Newman and Boerer. Newman, though an officer of the company, was nonetheless answerable to Boerer who, as the company's principal owner, directed its operations and ultimately made all the final decisions. In essence, Newman was directly responsible to Boerer. This sufficiently establishes an agency relationship between the declarant Newman and the defendant Boerer for purposes of admitting Barr's statement under Rule 801(d)(2)(D) against Boerer in her individual capacity.

■ Further, the statement attributed to Newman concerned a matter within the scope of his agency. He had ostensible authority over and took part in personnel decisions regarding hiring and firing of sales staff. The statement attributed to him was made during the course of his employment as vice president of sales. Appellee's contention that the statement was not admissible against her because Newman later left the company in a type of "bloodless coup" is unavailing. That Newman later left the company, the circumstances surrounding his departure, and whether he may have been plotting against the company at the time the statement was made, would go to the weight of the evidence, not its admissibility. Thus, New-

man's statement that Robin Weinberg was fired because of her pregnancy was admissible against defendant under Rule 801(d)(2)(D).

■ The other basis for the trial court's exclusion of the statement, as cumulative under Fed.R.Evid. 403, is one with which we are also unable to agree. Rule 403 grants a trial court broad discretion to exclude evidence when its probative value is substantially outweighed because admission would result in the needless presentation of repetitious proof. *United States v. Beech–Nut Nutrition Corp.*, 871 F.2d 1181, 1193 (2d Cir.), *cert. denied*, 493 U.S. 933, 110 S.Ct. 324, 107 L.Ed.2d 314 (1989). Here appellant presented only three witnesses at trial, none of whom testified to Newman's statement, which provided direct evidence that pregnancy played a role in defendant's employment decisions. Moreover, Barr's statement was the only evidence presented by an objective witness, as both appellant and Weinberg had sued defendant. While plaintiff may not be entitled to introduce several successive witnesses—each with greater indicia of credibility—to testify to the same statement, such is not the case here. Hence, we conclude that it was an abuse of discretion to deny admission to Barr's testimony concerning the reason for the termination of plaintiff's predecessor.

■ In contrast, Barr's testimony that she was told appellant was fired for "the same reason as [Weinberg]" was not attributed to a specific individual, and thus was evidence properly excluded by the district court. Appellant contends that the context of Barr's testimony provides a basis to conclude that the declarant was Sessler, who had succeeded Newman as vice president of sales. Although this contention is not implausible, our review of the record does not persuade us that the statement may properly be attributed to Sessler.

Zaken's reliance on *United States v. Cruz*, 910 F.2d 1072 (3d Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 709, 112 L.Ed.2d 698 (1991), for the proposition that the unidentifiability of the declarant is immaterial to the admissibility of this testimo-

ny is misplaced. In *Cruz,* the court found that the unidentified declarant was a coconspirator of the defendant, and this relationship rendered the statement admissible under Fed.R.Evid. 801(d)(2)(E) without further identification. *Id.* at 1082–83. But the distinction between the foundation required for the admissibility of a statement of a coconspirator under Rule 801(d)(2)(E) and that of an agent under Rule 801(d)(2)(D) was explicitly recognized. Distinguishing *Carden v. Westinghouse Elec. Corp.,* 850 F.2d 996 (3d Cir.1988), a case involving Rule 801(d)(2)(D), the *Cruz* court stated that

> [u]nlike the case at bar ... the identity of that declarant was critical because without knowing who she was or when she stated that she or the company wanted someone younger, the court could not determine if the statement was made by an agent, concerning the scope of the agency, and during the agency.

910 F.2d at 1081 n. 10.

Here, without identification of the declarant, the statement concerning the reason for Zaken's termination did not have a sufficient evidentiary foundation to establish the existence of an agency relationship as required under Rule 801(d)(2)(D). Hence, this portion of the deposition sought to be introduced as an admission by a party opponent was properly excluded. *See Carden,* 850 F.2d at 1002; *Cedeck v. Hamiltonian Fed. Sav. and Loan Ass'n,* 551 F.2d 1136, 1138 (8th Cir.1977).

## II

■ Appellant also challenges the evidentiary ruling that limited her testimony regarding the "daily sheets." This ruling is reviewed under an abuse of discretion standard. *See Lowe v. Commack Union Free Sch. Dist.,* 886 F.2d 1364, 1376 (2d Cir.1989), *cert. denied,* 494 U.S. 1026, 110 S.Ct. 1470, 108 L.Ed.2d 608 (1990). Zaken was permitted to explain various entries on 12 of the "daily sheets" on which her work activities were recorded. Her counsel indicated that plaintiff would explain, for the benefit of the jury, only those daily sheets that were difficult to interpret. During the

course of her testimony plaintiff was permitted to explain many abbreviations and figures, and to expound as to the significance of this evidence as it related to her effectiveness as a sales manager. The daily sheets were received in evidence in their entirety, and made available to the jury during its deliberations.

The district court eventually cut short this line of testimony, stating that "As I understand your case, you need to prove that she was pregnant and that's the reason she was discharged. The other end of it is up to the defendant if they have anything to show with respect to that. We're getting ahead of that." The trial court apparently believed such extensive testimony regarding plaintiff's qualifications as a sales manager was unnecessary as part of her *prima facie* case of discrimination.

While we might reach a different conclusion if the "daily sheets" were excluded from evidence or if all testimony necessary to explain the significance of the daily sheets had been disallowed, we do not think the district court abused its discretion in limiting Zaken's testimony, particularly because these records were received and available to the jury in their entirety, and because appellant was allowed to explain the significance of the abbreviations and figures on many of them. The trial record discloses that Zaken's testimony went well beyond explaining those notations ·that were difficult to interpret, and at the point this testimony was halted she was largely reiterating previous explanations.

## III

■ The remaining issue raised challenges the trial judge's supplemental charge. As part of its initial charge, the district court instructed the jury that if it found plaintiff's pregnancy played a motivating role in defendant's decisions, the jury should find in favor of plaintiff, while if defendant had legitimate nondiscriminatory reasons so that pregnancy was not a motivating factor, then they should find for defendant. During its deliberations, the jury requested the court to define "motivating role." Over objection, the district

court gave the following supplemental instruction: "[w]ith respect to the court's explanation of the words motivating role, I feel that a definition of motive is sufficient for me to give to you. Motive is what prompts a person to act. Motive is what prompts a person to act." This was error.

The Supreme Court instructs that "[i]n saying that [pregnancy] played a motivating part in an employment decision, we mean that, if we asked the employer at the moment of the decision what its reasons were and if we received a truthful response, one of those reasons would be that the applicant or employee was [pregnant]." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250, 109 S.Ct. 1775, 1790–91, 104 L.Ed.2d 268 (1989) (plurality opinion). A plaintiff is not required "to identify the precise causal role played by legitimate and illegitimate motivations in the employment decision she challenges." *Id.* at 241, 109 S.Ct. at 1786. Instead, she need only "prove that the employer relied upon sexbased considerations in coming to its decision." *Id.* at 242, 109 S.Ct. at 1786.

The trial court's definition of motivating role as "what prompts a person to act" was wrong insofar as it failed to explain to the jury that plaintiff need not show pregnancy was the primary reason for defendant's decisions to discharge plaintiff and deny her a bonus, but only that it was a factor relied upon by defendant. Moreover, the trial court's supplemental charge could have been interpreted to require that pregnancy had to be the factor that "prompted" the defendant to deny plaintiff a bonus and terminate her employment, rather than simply a factor that made a difference in these decisions. *See Paolillo v. Dresser Indus., Inc.*, 865 F.2d 37, 40 (in age discrimination action instruction that jury must find that " 'the real reason for the decision was the plaintiff's age' " constituted reversible error), *modified*, 884 F.2d 707 (2d Cir.1989). Given that nowhere in the district court's charge was the term "motivating role" correctly defined, we are not persuaded that the supplemental instruction on this issue had no effect on the jury. In fact, the opposite conclusion is one more likely to be the case. *See Arroyo v. Jones*, 685 F.2d 35, 39–40 (2d Cir.), *cert. denied*, 459 U.S. 1048, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982).

In short, the jury should have been instructed that if it found plaintiff had demonstrated by a preponderance of the evidence that her pregnancy played a part in defendant's decision, then it should find for plaintiff unless defendant demonstrated by a preponderance of the evidence that the same decision would have been made even if pregnancy had not been one of the factors contributing to it. *See Price Waterhouse*, 490 U.S. at 244–45, 109 S.Ct. at 1787–88. *See also Kump v. Xyvision, Inc.*, 733 F.Supp. 554, 561–62 (E.D.N.Y. 1990) (applying similar standard to pregnancy discrimination claim under New York's Human Rights Law). The trial court's instruction erroneously failed to delineate clearly each party's burden in this case.

### CONCLUSION

Accordingly, the judgment of the district court is reversed and the case remanded to it for a new trial consistent with this opinion.