### Richard M. LIPPAY

v.

### Dean C. CHRISTOS; Commonwealth of Pa.

### Dean C. Christos, Appellant.

### No. 92–7461.

United States Court of Appeals, Third Circuit.

Argued March 8, 1993.

Decided June 2, 1993.

Michael R. Lynn (argued), Law Office of Michael R. Lynn, Bloomsburg, PA, for appellee.

Ernest D. Preate, Jr., Atty. Gen., Michael L. Harvey (argued), Deputy Atty. Gen., Kate L. Mershimer, Sr. Deputy Atty. Gen., John G. Knorr, III, Chief Deputy Atty. Gen., Chief, Litigation Section, Harrisburg, PA, for appellant.

Before: BECKER, GREENBERG, and WEIS, Circuit Judges.

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

### I. *FACTUAL AND PROCEDURAL BACKGROUND*

Appellant Dean C. Christos appeals from a district court order entered July 31, 1992, denying his motion for judgment as a matter of law or, in the alternative, for a new trial,

as well as from a judgment of February 14, 1992, entered on a jury verdict for $150,000 in favor of the appellee Richard M. Lippay. Lippay brought this action under 42 U.S.C. § 1983 claiming that Christos violated his Fourth and Fourteenth Amendment rights by initiating criminal proceedings against him maliciously and without probable cause and by unlawfully causing his arrest.[1] On appeal, Christos challenges the sufficiency of the evidence, and argues that the district court committed reversible error by admitting hearsay testimony, submitting Lippay's Fourth Amendment seizure claim to the jury, and refusing to allow the jury to consider whether Christos was entitled to qualified immunity. Because we conclude that the district court should not have permitted introduction of the hearsay testimony and that this error prejudiced Christos, we will vacate the order denying Christos' motion for a judgment as a matter of law and will remand the matter to the district court to reconsider that motion without the hearsay testimony. In the event that the court again denies that motion, the district court will grant a new trial limited to the Fourth Amendment seizure claim.[2]

The germane facts as developed at the trial are as follows. In November 1986, the Bureau of Narcotics Investigation of the Pennsylvania Attorney General's Office initiated an investigation into suspected drug sales in Haddock's Bar, located in Coal Township, Northumberland County, Pennsylvania. In this investigation, Christos, an undercover agent for the bureau, worked with an informant, Darryl Philbin. Lippay was not an initial target of the investigation.

On August 5, 1987, Christos and Philbin went to Haddock's to make a drug purchase. Christos sat at the bar while Philbin met with several persons in the back. Soon Philbin reported to Christos that he had purchased a packet of drugs from an individual referred to as "Dick." Philbin described Dick as being approximately six feet tall, 190 pounds, with dirty blond hair, a beard and glasses. Although Christos saw Philbin speaking with Dick he did not witness the drug purchase.

Detective Richard Higgins of the Coal Township Police Department, who was working with Christos, joined Philbin and Christos outside of Haddock's. Higgins had driven past the bar, recording the license plate numbers of the cars parked in the lot across from it. Philbin told the two officers he thought that Dick was actually Mark "Stone" Stevens, who Philbin vaguely knew from earlier drug transactions. Higgins disputed this identification, and stated that Dick's physical description fit Lippay, who was both a corrections officer at the state correctional institution at Frackville, Pennsylvania, and a member of the local school board. Higgins also stated that he recognized Lippay's car in the lot.

The next day Higgins checked the license plates that he had recorded and found that none was registered to Stevens, and that only two were registered to persons with male names, one being Lippay. Higgins informed Christos of this, who then confirmed Higgins' results by checking himself. Some time later, Higgins informed Philbin of the plate check and showed him a photograph of the local school board in a high school yearbook. Philbin picked out Lippay in the photograph as the person from whom he had purchased drugs on August 5, 1987, even though in the yearbook photograph Lippay did not have a beard and was not wearing glasses. Later that same day, while Christos was working undercover at Haddock's, he heard someone ask Dick how was everything on the school board. Subsequently, Marlin Haddock, the bar owner, informed Philbin that Dick was Richard Lippay.

On October 15, 1987, Philbin claimed he purchased drugs from Dick at a home in

---

1. While Lippay additionally charged that Christos violated his Sixth Amendment rights, we see no basis for this claim.

2. We have jurisdiction pursuant to 28 U.S.C. § 1291. The district court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(3).

Lowhill Township, Lehigh County. Christos drove Philbin to these premises but was not inside during the purchase. After leaving the house, Philbin produced a small bag of cocaine which he said he had purchased from Dick.

Based upon all this information, Christos filed criminal complaints against Lippay in Northumberland and Lehigh Counties. The courts issued arrest warrants on which Lippay was arrested on February 27, 1989. But both sets of charges were dismissed without trial. At a preliminary hearing in Northumberland County, Philbin testified that at that time he could not positively identify Lippay as the person from whom he made the drug purchases, in part because at the hearing Lippay looked different from Dick as he did not have a beard and was not wearing glasses. Consequently, the district justice dismissed the charges. Philbin did not testify at the Lehigh County hearing, and the charges in that county subsequently were terminated by a *nolle prosequi* on motion of the district attorney. Despite the fact that the charges were dismissed in both prosecutions, the Pennsylvania Department of Corrections terminated Lippay from his job as a corrections officer, and he resigned from the school board.

Lippay filed suit against Christos in the United States District Court for the Middle District of Pennsylvania on January 7, 1991.[3] His complaint asserted three claims under 42 U.S.C. § 1983: (1) that Christos' filing of the complaints, which led to Lippay's subsequent arrest on the warrants, effectuated an unreasonable seizure of Lippay's person in violation of the Fourth Amendment; (2) that

Christos, by causing the warrants to be issued and Lippay to be arrested, maliciously prosecuted Lippay thus depriving him of due process in violation of the Fourteenth Amendment; and (3) that Christos violated Lippay's equal protection rights under the Fourteenth Amendment.

The case was tried before a jury from February 10 through February 14, 1992. During the trial, Lippay's mother testified that Philbin had stated to her in a conversation on September 21, 1990, that he told "his superiors all along" that he could not identify her son, but that they nevertheless brought the charges. According to Mrs. Lippay, Philbin, in the same conversation, said that he and Christos had been "set up" and led to believe that Lippay was involved in drug dealing. Christos objected to this testimony on hearsay grounds, but the district court admitted it under Fed.R.Evid. 801(d)(2)(D)— as an admission against interest made by an agent of a party-opponent.[4] In his testimony Philbin confirmed that he had a conversation with Lippay's mother, but denied making any of these comments. Furthermore, Philbin testified that he did not warn Christos prior to Lippay's arrest that he was uncertain as to his identification.

Christos moved, both after Lippay rested and at the close of all the evidence, for a judgment as matter of law, pursuant to Fed. R.Civ.P. 50(a).[5] Upon Christos' motion at the close of all the evidence, in a ruling which Lippay does not contest, the district court dismissed the malicious prosecution claim because Lippay failed to show malice, which the court defined as requiring "some personal animosity, revenge, vendetta, on the part of

---

**3.** Lippay also sued the Commonwealth of Pennsylvania, but upon an unopposed motion, the district court dismissed the Commonwealth from this action.

**4.** The district court overruled Christos' objection without explaining its basis for the ruling. But the court indicated that the evidence was admissible under Rule 801(d)(2)(D) in its memorandum opinion of July 31, 1992, denying Christos' motion for a judgment as a matter of law or for a new trial.

**5.** The parties' briefs have referred to this motion as seeking a directed verdict, but the motion more appropriately is termed a motion for judg-

the defendant toward the plaintiff." The court ruled that Lippay could not satisfy this element because "[Christos] never knew [Lippay] before, certainly not before August 5, 1987, the date of the first offense for which he was charged, and subsequent thereto never had any social contact, personal knowledge of his family." The court also dismissed Lippay's equal protection claim, a ruling which Lippay similarly does not challenge.

The district court, however, submitted to the jury Lippay's Fourth Amendment claim for unreasonable seizure predicated on his allegation that Christos caused the criminal proceedings to be initiated, which resulted in Lippay's arrest, either in reckless disregard for the truth or with knowledge that the allegations identifying Lippay as the perpetrator of the offenses were false. The jury returned a verdict for Lippay and, in response to an interrogatory, indicated that Christos acted with reckless disregard for the truth or on the basis of false allegations when he identified Lippay as the perpetrator of the crimes.

Following the trial, Christos again moved for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b) and moved, in the alternative, for a new trial pursuant to Fed.R.Civ.P. 59(a). Christos' motion challenged the sufficiency of the evidence and argued that the district court committed errors in: (1) permitting Mrs. Lippay to testify as to what Philbin told her; (2) submitting Lippay's Fourth Amendment seizure claim to the jury after the court had dismissed the malicious prosecution claim; and (3) refusing to allow the jury to consider whether qualified immu-

nity shielded Christos from Lippay's civil suit. The district court denied the motion by an opinion dated July 31, 1992. Christos then appealed.

## II. *STANDARD OF REVIEW*

 Usually when an appellant seeks a new trial by reason of a district court's alleged error on a ruling on the admissibility of evidence, we review the ruling on an abuse of discretion basis. *Link v. Mercedes–Benz,* 788 F.2d 918, 921–22 (3d Cir.1986). But here our review is plenary as the district court's ruling on the admissibility of Mrs. Lippay's hearsay evidence implicates " 'the application of a legally set standard.' " *Savarese v. Agriss,* 883 F.2d 1194, 1200 (3d Cir.1989) (quoting *In re Japanese Elec. Prods. Litig.,* 723 F.2d 238, 257 (3d Cir.1983), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Furthermore, we exercise plenary review on the other issues as well. *Langer v. Monarch Life Ins. Co.,* 966 F.2d 786, 796 (3d Cir.1992) (plenary review of order withholding issue from jury); *Tunis Bros. Co. v. Ford Motor Co.,* 952 F.2d 715, 722 (3d Cir.1991) (plenary review of order denying motion for judgment n.o.v.), *cert. denied,* —— U.S. ——, 112 S.Ct. 3034, 120 L.Ed.2d 903 (1992).[6]

## III. *DISCUSSION*

### A. *Hearsay Testimony*

 Christos first contends that the district court erred by permitting Lippay's mother to testify that Philbin told the investigators with whom he worked that he could not identify Lippay as the individual who sold him narcotics. The district court allowed the testimony as an admission by a party-oppo-

ment as a matter of law because the 1991 revision to Rule 50(a) abandoned the term "directed verdict." *See Wittekamp v. Gulf & Western, Inc.,* 991 F.2d 1137, 1141 n. 5 (3d Cir.1993).

**6.** Our case law establishing the standard of review on an appeal from a ruling on a motion for

a judgment n.o.v. is applicable to an order ruling on a post-trial motion for judgment as a matter of law under Fed.R.Civ.P. 50(b). *See Wittekamp v. Gulf & Western, Inc.,* 991 F.2d at 1141.

nent's agent pursuant to Fed.R.Evid. 801(d)(2)(D) [7] over Christos' objection.[8]

 Rule 801(d)(2)(D) provides:

A statement is not hearsay if—

(2) The statement is offered against a party and is ...

(D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship.

As the proponent of the evidence, Lippay had the burden to demonstrate that Philbin made this statement within the scope of an agency relationship with Christos. *See Oki America, Inc. v. Microtech Int'l, Inc.,* 872 F.2d 312, 314 (9th Cir.1989); *In re Japanese Elec. Prods. Litig.,* 723 F.2d at 300. Because the Federal Rules of Evidence do not define "agent" or "servant," we believe that Congress intended Rule 801(d)(2)(D) "to describe the traditional master-servant relationship as understood by common law agency doctrine." *Boren v. Sable,* 887 F.2d 1032, 1038 (10th Cir.1989). Furthermore, given Congress' intent that the Federal Rules of Evidence have uniform nationwide application, we apply federal common law rules of agency, rather than relying on the agency law of the forum in determining whether Philbin's statement comes within the Rule. *Id.*

Although recognizing that "Philbin was not an employee of the Commonwealth," the district court ruled that Rule 801(d)(2)(D) still applied because Philbin "worked with Pennsylvania drug enforcement agents on a regular basis, was still working with them at the time he made the statement in question to Phyllis Lippay, and was compensated for his work." Christos argues that Philbin's alleged statement does not fit within the rule because, as an informer, Philbin was not Christos' agent.

The question of whether Philbin's alleged statement to Mrs. Lippay comes within Rule 801(d)(2)(D) raises a novel issue. We recognize that several courts have held that statements by police officers or other law enforcement officials are not admissible on an admissions theory as substantive evidence against the sovereign in a criminal prosecution. *See, e.g., United States v. Kampiles,* 609 F.2d 1233, 1246 (7th Cir.1979), *cert. denied,* 446 U.S. 954, 100 S.Ct. 2923, 64 L.Ed.2d 812 (1980); *United States v. Powers,* 467 F.2d 1089, 1095 (7th Cir.1972), *cert. denied,* 410 U.S. 983, 93 S.Ct. 1499, 36 L.Ed.2d 178 (1973); *United States v. Santos,* 372 F.2d 177, 180 (2d Cir.1967); *United States v. Durrani,* 659 F.Supp. 1183, 1185 (D.Conn.1987), *aff'd,* 835 F.2d 410 (2d Cir.1987). Furthermore, one district court has applied this prin-

---

7. Lippay also argued that Philbin's alleged statement was admissible for substantive purposes as a prior inconsistent statement under Rule 801(d)(1)(A). However, because Philbin did not make the statement under oath at a proceeding or a deposition, the district court correctly ruled that it was not admissible under that rule. Similarly, the statement was not admissible under Rule 804(b)(3), which makes admissible any "statement which ... so far tended to subject [the declarant] to ... criminal liability ... that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." It is clear that Philbin's statements were not sufficiently self-incriminatory to fall within the rule, for the proffered testimony discloses only that Philbin had doubts regarding Lippay's guilt and that he informed the officers of the doubts. But inasmuch as Philbin did not testify against Lippay at one of the criminal proceedings and could not identify him at the other, nothing suggests that he committed perjury, falsified evidence, or committed any other crime in connection with Lippay's prosecution.

Thus, Philbin's statements were not against his penal interest. *See United States v. Pena,* 527

F.2d 1356, 1361 (5th Cir.1976) (holding that prior statement of informant who did not falsify testimony did not fall within the rule where he stated that he wanted to "set up" defendant to get even with him), *cert. denied,* 426 U.S. 949, 96 S.Ct. 3168, 49 L.Ed.2d 1185 (1976).

Philbin's statement was not admissible under Rule 801(d)(2)(E), which permits the admission by a co-conspirator of a party during the course and in furtherance of the conspiracy. There has been no showing that Philbin engaged in a conspiracy with Christos to frame Lippay. Thus, the only arguable bases for admission are Rules 801(d)(2)(D) and 613(b), which we consider below.

8. While Lippay argues that Christos waived his objection on this issue during Lippay's offer of proof, we are satisfied from our review of the record that Christos objected on the ground of hearsay at the time of the testimony. Furthermore, the district court noted in its opinion denying Christos motion for a new trial that although "defendant's counsel objected somewhat belatedly to the admission of this testimony, [he] nevertheless preserved his objection on the record."

ciple to a government informer testifying in a criminal trial, holding that his prior, inconsistent statements did not, "by virtue of his status as a government informant, [fall] within the scope of Rule" 801(d)(2)(D). *See United States v. Finley,* 708 F.Supp. 906, 910 (N.D.Ill.1989); *see also United States v. Pena,* 527 F.2d 1356, 1361 (5th Cir.1976) (refusing to decide whether informant should be considered an "agent" of the DEA for purposes of Rule 801(d)(2)(D), because the statements were made after informant's relationship with the government had ended), *cert. denied,* 426 U.S. 949, 96 S.Ct. 3168, 49 L.Ed.2d 1185 (1976). . But, to our knowledge, no federal court ever has decided whether a government informant's statements may be used as vicarious admissions under Rule 801(d)(2)(D) against a government agent in a civil trial.

■ Inasmuch as Lippay seeks to use the statement against Christos instead of against the Commonwealth, the most analogous cases concern the admission of extra-judicial statements by corporate employees for use in civil suits against their superiors, as distinguished from the corporations themselves. These statements are admissible under Rule 801(d)(2)(D) if the factors which normally make up an agency relationship are present as between the employee and the superior. *See United States v. Young,* 736 F.2d 565, 567 (10th Cir.1983) (per curiam) ("[W]hen such a statement is offered against another corporate employee, instead of the corporation, proper admission under Rule 801(d)(2)(D) will necessarily depend on the nature of the relationship between the declarant and the defendant."), *rev'd on other grounds,* 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985); *see also Zaken v. Boerer,* 964 F.2d 1319, 1322–23 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 467, 121 L.Ed.2d 375 (1992); *Merrick v. Farmers Ins. Group,* 892 F.2d 1434, 1440 (9th Cir.1990); *Boren v. Sable,* 887 F.2d at 1039; *United States v. Paxson,* 861 F.2d 730, 734–35 (D.C.Cir.1988); *Crawford v. Garnier,* 719 F.2d 1317 (7th Cir.1983) (per curiam); *Nekolny v. Painter,* 653 F.2d 1164, 1171 (7th Cir.1981), *cert. denied,* 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139 (1982).

■ Applying the principles of these cases to the facts before us, we conclude that Philbin was not Christos' agent for the purposes of Rule 801(d)(2)(D). These cases indicate that the federal courts will not impute the statements of a declarant to a party-opponent who is merely the declarant's co-employee. Instead, an agency relationship is established only where the party-opponent personally "directed [the declarant's] work on *a continuing basis.*" *Boren v. Sable,* 887 F.2d at 1041 (emphasis added). For example, in *Boren v. Sable,* the plaintiff, a factory worker who injured his hand, sought to introduce the out-of-court statement of a co-worker against the defendant, the president and chief executive officer of the company owning the factory. The plaintiff argued that the testimony was admissible under Rule 801(d)(2)(D) because the co-worker's position was subordinate to that of the defendant. The court, however, rejected this argument, holding that the declarant's "mere occupation of a subordinate position in the corporate chain of command" could not suffice to establish an "agency relationship" with the defendant. *Id.* at 1040. Rather, the plaintiff would have to demonstrate that the defendant "controlled the daily performance of [the declarant] at the time he made the alleged 'admissions.'" *See also United States v. Paxson,* 861 F.2d at 734 (rejecting defendant's argument that declarant was not an agent for him personally, but rather was a mere co-employee, where declarant, as vice-president of corporation and long-term employee reported directly to defendant on regular basis); *United States v. Young,* 736 F.2d at 567 (upholding admission of statements where testimony showed that declarant reported directly and regularly to party-opponent as part of his employment responsibilities); *Crawford v. Garnier,* 719 F.2d at 1324 (holding statements properly admitted under Rule 801(d)(2)(D) where party-opponent acknowledged that declarant was a subordinate); *Nekolny v. Painter,* 653 F.2d at 1172 (affirming introduction of statements of the declarant against the party-opponent who testified that declarant was her liaison and that she met with declarant on an almost daily basis).

Based on this case law, we find that Christos lacked the continuous supervisory control over Philbin that would create an agency relationship for the purposes of Rule 801(d)(2)(D). We find no evidence establishing that Christos acted as Philbin's supervisor on a regular basis. Indeed, Philbin testified that he *never* considered the agents with whom he worked to be his superiors. Even Philbin's relationship with the Bureau of Narcotics Investigation was tenuous as the bureau neither paid him a regular salary nor recognized him as an employee. Instead, the bureau made occasional payments to Philbin for the time he spent setting up drug purchases. Therefore, Philbin seems to have functioned as a sort of independent contractor to the bureau. *See Merrick v. Farmers Ins. Group,* 892 F.2d at 1440 (holding that establishing that declarant was merely an independent contractor to defendant does not suffice to show agency relationship for the purposes of Rule 801(d)(2)(D)).

Thus, to the extent that he can be considered to have worked at the bureau, Philbin acted more as Christos' "partner" than as his subordinate. Although Christos supervised some discrete aspects of Philbin's activities— *i.e.,* giving him the money to make drug purchases and searching him before and after transactions—this does not mean that he functioned as his superior in the context of an employer-employee relationship within Rule 801(d)(2)(D). As the court noted in *Young,* "expanding the rule to include statements made by *any* person who is subordinate to a party opponent may create a loophole in the hearsay rule through which evidence not contemplated by the authors of Rule 801 could be admitted." 736 F.2d at 567 (emphasis added). We do not believe that the authors of Rule 801(d)(2)(D) intended statements by informers as a general matter to fall under the rule, given their tenuous relationship with the police officers

with whom they work. In reaching this conclusion, we do not adopt a *per se* rule that an informer can never serve as an agent for a law enforcement officer for the purposes of Rule 801(d)(2)(D). We recognize that there may be situations where a police officer and informer will have an agency relationship. Thus, we will apply a case-by-case analysis to determine whether the officer had a sufficiently continuous supervisory relationship with the informer to establish agency. Therefore, all that we hold today is that in the circumstances of this case because the informant, Philbin, lacked the status of an employee regularly controlled by Christos, Philbin's statement was not saved from being hearsay by Rule 801(d)(2)(D).[9] Thus, the district court should not have permitted Mrs. Lippay to testify as to what Philbin told her.

■ During oral argument, we raised the possibility that the district court's admission of Mrs. Lippay's testimony regarding Philbin's statement could be upheld under Fed. R.Evid. 613(b), as extrinsic evidence of a prior inconsistent statement of a witness. Upon further consideration, however, we reject that result. Rule 613(b) provides:

> Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in rule 801(d)(2).

Under Rule 613(b) Philbin's statement could have been admissible solely for the purpose of impeaching his previous testimony that he had not warned Christos prior to the arrest that he was uncertain that Dick was truly Lippay.[10] Inasmuch as Philbin testified both

---

9. We recognize that Lippay sought to introduce Philbin's alleged statement to demonstrate that Christos heard and understood Philbin's warnings, not to prove that what Philbin told Christos was allegedly true. But "the fact that the alleged statement of" Philbin to Christos or other police officers "was nonhearsay, does not render admissible the alleged statement of" Philbin to Mrs.

Lippay, about which she testified. *See Boren v. Sable,* 887 F.2d at 1035.

10. Lippay called Philbin as a witness and on direct examination asked him: "Had you ever expressed, after August 5th, and after you had identified the picture in the yearbook, had you ever expressed any reservations to Agent Christos that possibly you have the wrong person?" Phil-

before and after Mrs. Lippay, he had the opportunity to deny making the statement and Lippay's trial counsel had the opportunity to cross-examine him in regard to his denial. Accordingly, it would have been permissible to use Philbin's statement to Mrs. Lippay for impeachment purposes.

But that is not what happened, for the record reveals that Lippay did not offer Mrs. Lippay's testimony to impeach Philbin, but instead offered it as substantive evidence. In the first place, none of the conversations between the parties and the district court regarding the admissibility of the statement suggest that they understood it would be introduced for impeachment only. Indeed, the district court did not give, and the parties did not request, a limiting instruction to the jury to consider Philbin's statement only in relation to his credibility and not for the truth of the matters it contained. Further, in its posttrial opinion the district court relied in part on that statement in holding that there was sufficient evidence to sustain the verdict. We also find it significant that in that opinion the district court, in considering whether the statement was admissible, discussed only Rules 801(d)(2)(A) and (D), and did not mention the possibility that the evidence was admissible for impeachment purposes.

■■■■■ Inasmuch as Mrs. Lippay's testimony included inadmissible hearsay, because the district court admitted Philbin's statement as substantive evidence, we must reverse unless we find that its admission was harmless error. This determination depends on whether we can conclude that it is highly probable that the error did not substantially affect Christos' rights. *See Advanced Medical, Inc. v. Arden Medical Sys., Inc.*, 955 F.2d 188, 199 (3d Cir.1992); *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 928 (3d Cir.1985). This standard is not met here for the prejudice to Christos from Mrs. Lippay's testimony is clear. Philbin's alleged statement was the only evidence which showed

that Philbin harbored any doubts as to Dick's identity and expressed them to Christos prior to Lippay's arrest. Because Christos' state of mind was the key issue before the jury, we cannot possibly conclude that it is highly probable that this evidence did not affect the verdict.

We recognize that the jury was read testimony from the Northumberland County preliminary hearing, where Philbin was asked, "Did you make, for instance, Mr. Christos aware of the fact that you can't positively identify this individual?" and he answered "Yes, I have." However, this testimony does not mean that Philbin's hearsay statement was merely cumulative so that the error in admitting it was harmless. *Cf. United States v. Basic Constr. Co.*, 711 F.2d 570 (4th Cir. 1983) (per curiam) (stating that evidentiary ruling was harmless where evidence in question was cumulative of evidence already properly admitted), *cert. denied*, 464 U.S. 956, 1008, 104 S.Ct. 371, 78 L.Ed.2d 330 (1983). The Northumberland testimony did not specify when Philbin told Christos of his doubts about identifying Lippay and thus Philbin may have referred to a time after the arrest.[11] Consequently, it is not at all unlikely that if the jury concluded that Philbin had doubts regarding the identification of Lippay before the arrest and warned Christos of these doubts, the jury so concluded only because of Mrs. Lippay's testimony. Accordingly, the district court's evidentiary error compels us to reverse.

### B. *Judgment As A Matter of Law*

■■ Christos next asserts that the district court erroneously denied his motion for judgment as a matter of law on the Fourth Amendment seizure claim, which was the only claim remaining after the district court dismissed Lippay's equal protection and malicious prosecution claims. Lippay's Fourth Amendment seizure claim was predicated on his challenge to the affidavits of probable cause used to secure the warrants for his

---

bin responded: "Not until the date of the preliminary hearing" which Philbin explained was after the arrest and after the criminal charges were filed.

11. Indeed, this preliminary hearing testimony was consistent with Philbin's testimony at the trial that it was at the preliminary hearing that he expressed his identification doubts regarding Lippay to Christos.

arrest. In order to prevail on this claim, Lippay needed to satisfy the test enunciated in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), which requires a showing that the maker of the affidavit either stated a deliberate falsehood or acted with a reckless disregard for the truth. Proof of negligence or innocent mistake is insufficient. *Id.* at 171, 98 S.Ct. at 2684. To demonstrate that Christos acted with reckless disregard for the truth, Lippay had to prove that Christos made the statements in his affidavits "with [a] high degree of awareness of their probable falsity. . . ." *Garrison v. Louisiana*, 379 U.S. 64, 74, 85 S.Ct. 209, 216, 13 L.Ed.2d 125 (1964). In its opinion denying Christos' motion for judgment as a matter of law, the district court principally relied on three pieces of evidence as support for the verdict. First, the court noted what it termed "[c]urious inconsistencies in Philbin's identification of Lippay"—the fact that Philbin at first thought that Dick was Mark Stevens. Second, the court cited Philbin's hearsay statement to Mrs. Lippay. Third, the court found that there was evidence that Christos was anxious to see Lippay arrested and convicted because he was a corrections officer and school board member. More specifically, the court pointed to the fact that after the charges against Lippay were dismissed, Christos called Haddock's attorney to pressure Haddock to testify against Lippay. Although acknowledging that the conversation with the attorney occurred after the arrest, the court found it relevant in showing Christos's motivation in prosecuting Lippay.[12]

If we assessed whether Lippay's case should have gone to the jury and whether Christos' posttrial motion for judgment prop-

erly was denied, we would consider only the admissible evidence. Yet, in the unusual circumstances of this case we are reluctant to make the initial determination, after the exclusion of the prejudicial hearsay, as to whether Christos is entitled to judgment as a matter of law. Rather, we believe that the district court should have the first opportunity to assess the adequacy of the evidence to support the verdict absent that excluded testimony. We so conclude because, notwithstanding an appellate court's plenary review over a district court's denial of a motion for judgment as a matter of law, it nevertheless may be assisted by the district court's initial assessment of the record. *Cf. Crown Cork & Seal, Inc. v. Central States Pension Fund*, 881 F.2d 11, 18–19 (3d Cir.1989) (stating that in dispute under statute providing for arbitration it is worthwhile to have preliminary determination of legal issues by arbitrator even if they ultimately will be resolved by the court). Accordingly, we will vacate the order of July 31, 1992, denying Christos' motion for a judgment as a matter of law and will remand the matter to the district court to reconsider that motion.[13] Of course, if the district court again denies the motion for judgment, Christos will be entitled to a new trial. Thus, we also consider Christos's remaining contentions because they raise issues which are likely to arise again during the retrial.

C. *Whether the District Court Improperly Submitted Lippay's "Seizure" Claim After it Had Found that There was No Evidence that the Prosecution was Motivated by Malice*

■■■ Christos argues that the district court's dismissal of Lippay's malicious prose-

---

**12.** In its ruling, the district court suggested that evidence of the license plate check made by Higgins might not be entitled to great weight because "Lippay's attorney during the pendency of the criminal charges against him revealed that the license number attributed to Lippay in fact belonged" to an automobile registered to the Commonwealth of Pennsylvania. The district court, however, apparently confused the evidence. There was testimony that at one point Philbin took down the license plate of a car outside of Haddock's which he believed to have belonged to a suspect other than Lippay, and it turned out after the license plate check that the car belonged to the state. There was no evi-

dence, however, that the license plate checked by both Higgins and Christos belonged to anyone other than Lippay.

**13.** We realize that the remand of the matter for reconsideration of Christos' motion for judgment may result in a trial that would have been avoided if the district court denies that motion but we would have granted it. But that is not an untoward result as that is exactly what would have happened if the district court originally had granted Christos' motion for a new trial but denied his posttrial motion for judgment as neither party could have appealed at that time.

cution claim precluded the submission of his Fourth Amendment claim to the jury because the claims have some of the same elements. Lippay's malicious prosecution claim was asserted as a violation of the due process clause. We have recognized such a claim under section 1983, so long as the plaintiff proves the existence of the elements of the common law tort of malicious prosecution. *Rose v. Bartle,* 871 F.2d 331, 349 (3d Cir.1989); *Lee v. Mihalich,* 847 F.2d 66, 70 (3d Cir.1988). In determining the elements of the common law tort, we look to the law of the forum, in this case, Pennsylvania. *See Lee v. Mihalich,* 847 F.2d at 70; *Deary v. Three Un–Named Police Officers,* 746 F.2d 185, 194 n. 11 (3d Cir.1984).

■■■■■ Under Pennsylvania law, the elements of a malicious prosecution claim are that the defendant (1) instituted the proceedings (2) without probable cause with (3) actual malice and (4) that the proceedings terminated in favor of the plaintiff. *See Griffiths v. CIGNA Corp.,* 988 F.2d 457, 463 (3d Cir. 1993); *Lee v. Mihalich,* 847 F.2d at 69–70; *Kelley v. General Teamsters, Local Union 249,* 518 Pa. 517, 544 A.2d 940, 941 (1988). Malice has been defined as "ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, *or* its use for an extraneous improper purpose." *Lee v. Mihalich,* 847 F.2d at 70 (emphasis added). Malice may be inferred from the absence of probable cause. *Griffiths v. CIGNA,* 988 F.2d at 463; *Kelley,* 544 A.2d at 941; *Hugee v. Pennsylvania R. Co.,* 376 Pa. 286, 101 A.2d 740, 743. Probable cause is proof of facts and circumstances that would

convince a reasonable, honest individual that the suspected person is guilty of a criminal offense. *Griffiths v. CIGNA,* 988 F.2d at 464; *Bruch v. Clark,* 352 Pa.Super. 225, 507 A.2d 854, 857 (1986). "Probable cause does not depend on the state of the case in point of fact but upon the honest and reasonable belief of the party prosecuting." *Miller v. Pennsylvania R. Co.,* 371 Pa. 308, 89 A.2d 809, 811 (1952).

■■■■ Lippay's Fourth Amendment claim charged that he was unreasonably seized.[14] Where a police officer causes an arrest to be made pursuant to a warrant which he. obtained on the basis of statements he knew to be false or on the basis of statements he makes in reckless disregard of the truth, a plaintiff may recover damages under section 1983 for "unreasonable seizure" of his person in violation of the Fourth Amendment.[15] *See Forster v. County of Santa Barbara,* 896 F.2d 1146, 1148 (9th Cir.1990) (per curiam) (adopting the standard of determining the validity of search warrants enunciated by *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 in permitting section 1983 plaintiffs to recover for violations of the Fourth Amendment); *Haupt v. Dillard,* 794 F.Supp. 1480, 1490 (D.Nev.1992) (same).[16] Because recovery under the Fourth Amendment seizure claim always requires proof that the defendant did not believe in the plaintiff's guilt or recklessly disregarded the truth, and the malicious prosecution claim, asserted under the Fifth and Fourteenth amendments, sometimes is predicated on similar proof to demonstrate the malice ele-

---

14. In charging the jury on this claim, the district court did not mention the Fourth Amendment, but stated that Christos' alleged conduct subjected Lippay to "a deprivation of ... due process." This statement is broadly true, as an arrest made on the basis of a warrant invalidated by a false affidavit does constitute a due process violation. But the statement is somewhat imprecise, as Lippay specifically asserted this claim as violation of his Fourth Amendment rights, and the cases indicate that a section 1983 claim based on a falsified affidavit in support of an arrest warrant is predicated on a Fourth Amendment claim. *See Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *Forster v. County of Santa Barbara,* 896 F.2d 1146, 1148 (9th Cir.1990) (per curiam); *Haupt v. Dillard,* 794 F.Supp. 1480, 1490 (D.Nev.1992).

15. We are not suggesting that there can be a double recovery for one loss. Furthermore, we recognize that while in a malicious prosecution case a plaintiff ordinarily will have been arrested, the arrest is not an element of the cause of action, though it may be germane to damages.

16. Lippay elected to use the terms "due process" and "Fourth Amendment" in his complaint to divide these two claims. No matter what terms are used, the important thing to understand is that there are two types of section 1983 actions involved here: one which requires proof of the traditional elements of a malicious prosecution claim and one which requires the plaintiff to satisfy the *Franks* standard.

ment, the failure to satisfy one claim often will preclude the other. *See Haupt v. Dillard*, 794 F.Supp. at 1491.

 Christos thus argues that inasmuch as the district court dismissed Lippay's malicious prosecution claim for lack of malice, a ruling Lippay does not challenge on this appeal, it should have dismissed the Fourth Amendment seizure claim as well. While there is an obvious symmetry to Christos' contention, we nevertheless reject it as the district court's error was not in submitting the Fourth Amendment seizure claim to the jury, but rather in dismissing the malicious prosecution claim on the basis it did. The district court dismissed the malicious prosecution claim on the assumption that malice meant *only* ill-will and that no such ill-will could have been present because Christos did not know Lippay before the arrest.

This assumption is faulty for two reasons: first, a police officer could have ill-will or spite against someone he never met—*i.e.*, a member of a particular ethnic or racial group. Second, the Supreme Court of Pennsylvania never has defined malice as meaning only spite. "Legal malice is not limited to motives of hatred or ill will, but may consist of defendant's *reckless* and oppressive *disregard* of plaintiff's rights." *Hugee*, 101 A.2d at 742 (emphasis added). As our use of the disjunctive in *Lee v. Mihalich* illustrates, malice can mean ill-will *or* the use of a prosecution for an extraneous purpose *or* a lack of belief in the guilt of the accused. The last alternative definition of malice is substantially the same standard as the *Franks* standard employed in the analysis of a Fourth Amendment seizure claim. *See also* Restatement (Second) of Torts § 668, Comment d (1977) (defining malice as the initiation of criminal proceedings for an improper purpose, which is further defined as when (1) the accuser does not believe in the guilt of the accused; (2) the proceedings are initiated primarily because of hostility or ill will toward the accused; or (3) the proceedings are initiated

for the purpose of obtaining a private advantage).

In any case, because Pennsylvania law allows the fact finder to infer malice from the absence of probable cause, the determination of which involves a test similar to the *Franks* standard, the absence of evidence showing ill-will, which is distinct from a lack of probable cause, on the part of the defendant in a malicious prosecution claim should not necessarily preclude the fact finder from considering a connected Fourth Amendment claim. In these circumstances, if we found that the district court erred because its dismissal of the malicious prosecution claim barred the Fourth Amendment seizure claim, we would be compounding its error.

 Notwithstanding our conclusion that the district court should not have dismissed the malicious prosecution claim for the reasons it stated, we will not grant Lippay relief by reason of this error, as he has not cross-appealed from the judgment in the district court. *See United States v. Tabor Court Realty Corp.*, 943 F.2d 335, 342–43 (3d Cir. 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1167, 117 L.Ed.2d 413 (1992). While we may have some limited power to enlarge the rights of an appellee not cross-appealing, *see id.*, we will not exercise that power here for Lippay has not contended that the district court erred in dismissing the malicious prosecution claim.[17]

### D. *Qualified Immunity*

Finally, Christos argues that the district court erred in refusing to permit the jury to consider his qualified immunity defense. We reject this contention because the immunity issue necessarily was subsumed in the court's charge on the section 1983 claim. "Generally, government officials performing discretionary functions enjoy qualified immunity from civil damages when their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable

---

17. Of course, if the district court on the remand grants Christos a judgment as a matter of law, this discussion of the relationship between the malicious prosecution claim and the Fourth Amendment claim will be moot. We are not suggesting that there was enough evidence for

either claim to survive Christos' motion for judgment. We simply are saying that on the facts here the dismissal of the malicious prosecution claim did not preclude Lippay from recovering on the Fourth Amendment claim.

person would have known.'" *Lee v. Miha-lich,* 847 F.2d at 69 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)).

■ As we discussed above, to recover under section 1983 for his Fourth Amendment seizure claim, Lippay had to prove that Christos acted with reckless disregard for the truth or falsified information contained in the affidavits used to initiate the criminal proceedings. If a police officer submits an affidavit containing statements he knows to be false or would know are false if he had not recklessly disregarded the truth, the officer obviously failed to observe a right that was clearly established. Thus, he is not entitled to qualified immunity. *Malley v. Briggs,* 475 U.S. at 345, 106 S.Ct. at 1098; *Olson v. Tyler,* 771 F.2d 277, 281 (7th Cir.1985). Accordingly, inasmuch as the jury found that Lippay proved all the elements necessary to recover on the Fourth Amendment seizure claim, it could not at the same time have concluded that Christos did not violate a "clearly established" constitutional right of which "a reasonable person would have known." Similarly, if the jury had found that Lippay could not recover on his Fourth Amendment claim, then a charge on the immunity issue on that claim would have been superfluous. For these reasons, the district court was justified in refusing to submit Christos' immunity claim to the jury.

## IV. *CONCLUSION*

In view of the aforesaid, we will reverse the judgment of February 14, 1992, and will vacate the order entered on July 31, 1992, denying Christos' motion for judgment as a matter of law or, in the alternative, for a new trial. We will remand the case to the district court to reconsider Christos' motion for a judgment as a matter of law and, if the court denies the motion, to grant a new trial on Lippay's claim predicated on his seizure in violation of the Fourth Amendment.

BECKER, Circuit Judge, concurring in the judgment.

I agree with the majority that Lippay failed to lay a sufficient foundation for admission of the challenged portion of Mrs. Lippay's testimony under Fed.R.Evid. 801(d)(2)(D), and that the admission of this evidence was not harmless. Consequently, as the majority concludes, unless the district court determines on remand that Christos is entitled to judgment as a matter of law under Fed.R.Civ.P. 50(a), it must order a new trial. I write separately because I believe that the majority has erred on an important point in the law of evidence. In particular, I take issue with the majority's assertion, *see* Majority at 1497, that because the Federal Rules of Evidence do not define "agent" or "servant" in conjunction with Fed.R.Evid. 801(d)(2)(D), we should presume that Congress intended courts to import into federal evidence law the substantive law of agency and master-servant relations.[1]

I believe that the correct rule is that an out-of-court statement may be admissible under Rule 801(d)(2)(D) when a sufficient supervisory relationship exists between two individuals who share a unity of interest regarding the subject matter of the testimony in question. As the authors of one treatise have explained, "[t]he notion of agency in Rule 801(d)(2)(D) turns on the authority of a party to supervise or direct the activities of another." 4 David W. Louisell & Christopher B. Mueller, Federal Evidence § 426, at 157 (Supp.1992). As long as a party has demonstrated a sufficient supervisory relationship between the declarant and the opposing party, Rule 801(d)(2)(D) should apply, even if there is technically no agency or master-servant relationship between the two

---

1. I do agree with the majority, however, that we should not import the law of the forum in which the dispute arose, but rather should apply and fashion federal common law under Rule 801(d)(2)(D). *See* Majority at 1497. I also agree with the majority's refusal to establish a blanket rule that informants may never qualify as the agents or servants of the law enforcement officers for whom they work under Rule 801(d)(2)(D). *See* Majority at 1498–99. Rather, as the majority opinion makes clear, whether or not an informant's out-of-court statements are admissible under Fed.R.Evid. 801(d)(2)(D) must be analyzed on a case-by-case basis, as the exact nature of the relationship between the informant and the officer will not be the same in each criminal investigation.

under substantive agency or master-servant law.

In *United States v. Paxson*, 861 F.2d 730 (D.C.Cir.1988), the D.C. Circuit explained that it would be a "hyper-technical construction of [Rule 801(d)(2)(D)]" to conclude that it does not apply when there is a sufficient supervisory relationship between two individuals, although there is no actual agency relationship between the two. *Id.* at 734; *see also* 4 Louisell & Mueller, *supra*, § 426, at 324–25 (1980) ("[T]he interpretation of [Rule 801(d)(2)(D)] should not be hobbled by the definitions of ["agent" and "servant"] which would apply under the substantive law."). I agree. This approach has also been followed by most courts of appeals that have addressed the meaning of "agent" and "servant" under Rule 801(d)(2)(D); while their interpretation of Rule 801(d)(2)(D) is informed by the elements of substantive agency or master-servant law, they do not strictly apply it. *See Zaken v. Boerer*, 964 F.2d 1319, 1322–23 (2d Cir.) *cert. denied*, —— U.S. ——, 113 S.Ct. 467, 121 L.Ed.2d 375 (1992); *Paxson*, 861 F.2d at 734; *Crawford v. Garnier*, 719 F.2d 1317, 1324 (7th Cir.1983); *Nekolny v. Painter*, 653 F.2d 1164 (7th Cir.1981). *But see Boren v. Sable*, 887 F.2d 1032, 1038 (10th Cir.1989) (applying common law definitions of "agent" and "servant" to Rule 801(d)(2)(D)).

The majority's strict importation of the substantive law of agency and master-servant relations into Rule 801(d)(2)(D) analysis ignores one of the overarching principles of the Federal Rules of Evidence: flexibility in the application of the evidentiary rules to accommodate the particular considerations and factual contexts arising in specific cases. It is well-recognized that the drafters of the Federal Rules of Evidence, while establishing uniform evidentiary rules, intended the Federal Rules of Evidence to offer judges a high degree of flexibility in their application. *See, e.g.,* 1 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence at iv (1992); *id.* ¶ 102[01], at 102–7; 1 Louisell & Mueller, *supra*, § 102, at 5–7 (1977); David P. Leonard, *Power and Responsibility in Evidence Law*, 63 S.Cal.L.Rev. 937, 961–67 (1990); Thomas M. Mengler, *The Theory of Discre-*

*tion in the Federal Rules of Evidence*, 74 Iowa L.Rev. 413, 415 (1989). The majority, however, by requiring strict adherence to the definitions of "agent" and "servant" imposed by the substantive law in the application of Rule 801(d)(2)(D), eschews flexibility in favor of a more mechanical approach.

While I disagree with the majority's approach, I reach the same conclusion under the facts of this case. I believe that Lippay has failed to offer sufficient evidence to demonstrate that the informant, Philbin, was under the supervision and control of Christos (rather than officials at the Pennsylvania Bureau of Narcotics Investigation) to justify application of Rule 801(d)(2)(D). I therefore concur in the judgment.