POLLAN, District Judge,
concurring in part and dissenting in part
I agree with virtually all of the opinion of the court. With respect to the legal standards announced by the court, I join the court’s opinion without reservation. Where I part company with the opinion is in the court’s application of its correct summary judgment standard to the facts in this ease. In my view, the question whether the “ ‘corrected’ warrant” application (i.e., the warrant application as it would have been, had it been amended to cure officer Russo’s omissions and misstatement) established probable cause for Wilson’s arrest is one that should be reserved for the finder of fact.[1]
*796 A.
In a portion of the opinion of the court with which I do not take issue, the court determines that “[a]ny reasonable person would know that the significant height differential, and the fact that an eye-witness did not identify Wilson, were the kind of things the judge would wish to know.” Supra pp. 787-88 (quotation omitted). The court is surely correct in this conclusion. Like Braverman, Druce had ample opportunity to view the robber in the store, so his failure to identify the robber in the lineup is undoubtedly a significant fact. Braverman’s and Druce’s descriptions .of the robber’s height are at least as significant for these purposes. Braverman described the robber as “very tall” and estimated his height as between 6’2” and 6’4”. Druce also described the robber as “very tall,” guessing his height to be “about 6’5” tall, maybe a little bit taller.” Indeed, the statements of Braverman and Druce reveal that they were very attentive to the robber’s height. Druce, for instance, stated that while the robber was not someone he had seen before, “it would be someone I’d remember because of the height of him, he’s very tall that’s the first thing I said to Renee, ‘He’s tall, he’s very tall.’ ”
For purposes of identification of a suspect, the significance of the difference in height between Wilson and the man described by Druce and Braverman may be even greater than is suggested by the court’s statement that Wilson was “four to seven inches shorter” than the robber described in the police report. Supra p. 791. Both Druce and Braverman were quite clear that they viewed the robber as an exceptionally tall man. And while estimates of height may well be off by a few inches in either direction, it would be remarkable if someone who had had nearly an hour to observe a person of average height — as Wilson is — would describe that person as being exceptionally tall. And; of course, it would be that much more remarkable if two such observers made the same mistake. Thus, the height discrepancy was clearly a fact that a reasonable officer would expect .a judge to want to know. It follows that knowingly omitting such information in the context of a warrant application would amount to reckless disregard for the truth, as the court has concluded. Similarly, the fact that Druce failed to identify Wilson was information that a judicial officer would be expected to want to know. And, finally, I agree with the , court that Russo’s statement to the judge about the timing of DaVila’s seeing Wilson in the parking lot constituted reckless disregard for the truth.
The court follows these conclusions with a discussion of the materiality of the omissions and misstatement, concluding that the omissions and misstatement were not material in the face of Braverman’s positive identification. Indeed, the court concludes that “no reasonable jury could find facts that would lead to the conclusion that Wilson’s ‘corrected’ warrant lacked probable cause.” Supra p. 792.
That statement contains an implicit recognition of the fact that, in the Third Circuit, it is well established that “the existence of probable cause in a section 1983 action is a question of fact.” Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir.1997); see also Groman v. Township of Manalapan, 47 F.3d 628, 635 (3d Cir.1995) (reversing summary judgment as to issue of probable cause); Deary v. Three UnNamed Police Officers, 746 F.2d 185 (3d Cir.1984) (same); Patzig v. O’Neil, 577 F.2d 841 (1978) (holding that the existence of probable cause in civil cases is “a question for the jury”).
Judge Garth, in his concurrence, argues that a positive identification by an eyewitness deemed reliable by the police or the judicial officer issuing the warrant is conclusive- — as a matter of law — on the question of probable cause without regard for any extrinsic evidence that may cast doubt *797 on the accuracy of that identification. The court rejects Judge Garth’s submission. While it is undeniable that a positive identification is very strong evidence in support of a finding of probable cause — a finding that, as Judge Garth correctly notes, is properly made on far less evidence than that needed to establish guilt — the court’s rejection of a per se rule is surely correct. For, as the court’s hypothetical illustrations demonstrate, there may well be cases in which the exculpatory evidence is so overwhelming as to outweigh the inculpa-tory effect of a positive identification, even for purposes of a showing of probable cause.
It is not my view that the exculpatory evidence is so strong in this case as to require, as a matter of law, the conclusion that a judicial officer to whom the “corrected” warrant application was submitted could not have found probable cause. It is my view, however, that the present ease is within the class of cases — a class that is likely to be a limited one where a positive identification has been obtained — in which a factfinder might reasonably conclude that a judicial officer assessing the “corrected” warrant application would not have found probable cause. I say this for the following reasons.
The court acknowledges that Braver-man’s identification “should be viewed with some skepticism because her identification of Wilson was inherently incompatible with her description of the robber.” Supra p. 791. While the court does not undertake to quantify the level of skepticism the court would apply, it appears that the level is not very high, for Braverman’s weakened identification, coupled with DaVila’s observation of Wilson in the vicinity, is still viewed by the court as sufficient to support the conclusion that a reasonable finder of fact would be required to conclude that a judicial officer would have found probable cause, notwithstanding other strongly exculpatory evidence: namely, Druee’s description of . Wilson and his failure to identify Wilson as the robber, and the fact that Wilson was seen in the parking lot at a time when the robber was in the flower shop. By contrast, it seems to me well within the range of plausibility that a judicial officer assessing the “corrected” warrant application, (1) might have viewed Braverman’s identification with very considerable skepticism; (2) might have largely or entirely discounted DaVi-la’s statement, given that the time at which DaVila said she saw Wilson in the parking lot was the very time at which the robber was in Braverman’s flower shop; and (3) might have credited the other exculpatory evidence quite highly. If so, the judicial officer might reasonably have concluded that probable cause had not been established. “But the weight that a neutral magistrate would likely have given such information is a question for the finder of fact.” Velardi v. Walsh, 40 F.3d 569 (2d Cir.1994). Accordingly, so it seems to me, the District Court’s grant of summary judgment on the question of probable cause was inappropriate.
That it would be reasonable to conclude that Russo had not established probable cause is strongly supported by the court’s conclusion that any reasonable person would view the omitted information as information that a judicial officer would want to know — a conclusion that, as I have discussed, is quite proper given the significance of that information in the context of the present case. A judicial officer would be expected to want to know this information largely because such information at least had the potential to make a difference in the determination of the existence of probable cause. It is thus puzzling that the court appears to conclude both (1) that it would be unreasonable to keep the information from the judge, which would seem to suggest that it could make a difference to a probable cause inquiry, and (2) that it would be unreasonable to conclude that the information would have made a difference to probable cause. It appears that the court views the information as potentially significant in the first context, but *798 necessarily insignificant in the second. For the reasons discussed above, I agree with the court that the information omitted and misstated by Russo was of substantial significance. And, for essentially the same reasons, I also believe that a factfinder could find that, had it been supplied, the omitted and misstated information would have had a determinative effect on the issue of probable cause, even in the face of a positive identification.[2]
B.
In the previous section, I stated my agreement with the court that Russo’s misstatement and omissions were in reckless disregard for the truth. But I have concluded, in disagreement with the court, that a factfinder could find that, but for the misstatement and omissions, a judicial officer would not have issued an arrest warrant, from which it follows that Russo’s conduct could be found by a factfinder to have deprived Wilson of a constitutional right. The right not to be arrested on the basis of a warrant obtained on the basis of a law enforcement officer’s representations or omissions made in reckless disregard of the truth is a clearly established right. See Lippay v. Christos, 996 F.2d 1490, 1504 (3d Cir.1993) (“If a police officer submits an affidavit containing statements he knows to be false or would know are false if he had not recklessly disregarded the truth, the officer obviously failed to observe a right that was clearly established. Thus, he is not entitled to qualified immunity.”)
Accordingly, I would reverse the entry of summary judgment in favor of Russo, and remand the case for further proceedings.

. I agree with the court that summaiy judgment was properly granted in favor of officer *796 Woroniecki for the reasons ’discussed by the court, supra p. 783 note 1.

. A fortiori, I also disagree with the court's conclusion, in section III of the court's opinion, that no reasonable factfinder could have found that the additional exculpatory evidence gathered by Russo subsequent to Wilson's arrest undermined probable cause. (As the court’s opinion notes, see supra p. 792, I have had occasion, in Brady v. Dill, 187 F.3d 104, 123 (1st Cir.1999) (concurring), to address the further question, which the court in the present case identifies but does not undertake to resolve, whether an officer who acquires evidence which incontestably establishes the innocence of a person he holds in custody is constitutionally obligated to release that person without seeking judicial intervention. In Brady, I was sitting as a member of a First Circuit panel, and my affirmative answer to the question was rejected by the panel majority. In my view, application to the present record of either the standard I endorsed in Brady, or that adopted by the Brady majority, would preclude recovery on this basis. Accordingly, I do not differ with the ultimate conclusion reached by the court; that is, that summary judgment is appropriately affirmed with respect to plaintiff's claim discussed in section III of the court's opinion.)