# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Robert Hall, | : | |
| Appellant | : | |
| | : | No. 248 C.D. 2017 |
| v. | : | Argued: October 17, 2017 |
| | : | |
| Det. Brian Peters | : | |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE ROBERT SIMPSON, Judge (P.)
          HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                    **FILED: November 30, 2017**

Appellant Robert Hall (Plaintiff) appeals from an order of the Court of Common Pleas of Philadelphia County[1] (trial court) that granted Detective Brian Peters' (Detective) motion for summary judgment and dismissed Plaintiff's complaint for malicious prosecution against him. Plaintiff stood trial twice for first-degree murder. The first trial ended in a mistrial. The second trial ended in an acquittal. Thereafter, Plaintiff filed a malicious prosecution claim against Detective. Ultimately, the trial court determined Plaintiff failed to offer sufficient evidence to establish either the absence of probable cause or the presence of malice, each of which is an essential element of a malicious prosecution claim.

Plaintiff contends the trial court erred in granting summary judgment where there were genuine issues of material fact about whether: (1) Detective intentionally omitted exculpatory facts from the affidavit of probable cause; (2)

---

[1] The Honorable Karen Shreeves-Johns presided.

Detective's failure to adequately investigate vitiated probable cause; and, (3) Detective's conduct, including the suppression of critical exculpatory evidence, indicated that he acted with willful misconduct. Upon review, we affirm.

## I. Background
### A. Shooting Incident; Eyewitnesses

The trial court found the following facts. On March 23, 2011, the Philadelphia Police Department assigned Detective to investigate the shooting death of Raheem Bennett (Decedent), which occurred at the corner of North 18th Street and Montgomery Avenue at approximately 8:00 p.m. that evening. There were several eyewitnesses to the event, including Alfred Thomas (Primary Witness), his brother Malachi Thomas (Witness M.T.), and Khalif Hooker (Witness K.H.).

Primary Witness, a friend of Decedent, stated he was walking home with Decedent from a basketball game at the Martin Luther King Recreation Center (Rec Center) when an assailant shot Decedent twice. Primary Witness called 911 to report that his friend was shot. However, Primary Witness stated in the call that he did not see the shooter. Thereafter, Primary Witness went to the police station. After spending 17 hours there, Primary Witness identified Plaintiff as the shooter from a picture on Facebook. Primary Witness also identified Plaintiff as someone who played basketball with Decedent earlier that evening.

Detective concluded that he did not have enough evidence at that stage to get a search warrant for Plaintiff's home. At that time, the protocol for homicide

2

dictated that one identification was not sufficient for an arrest in the absence of corroborating evidence.

Witness K.H., another alleged eyewitness, identified the shooter as follows: caramel complexion, short hair, light beard, five feet, nine inches tall, medium build, sort of like a muscle build. Witness K.H. was the sole eyewitness at the grand jury proceeding. Witness K.H. indicated in the investigation interview record that he had a clear view of the incident from across the street.

During the investigation, Detective learned that Primary Witness' younger brother, Witness M.T., observed Plaintiff running from the scene. Witness M.T. was across the street about half a block away at the time. Witness M.T. described Plaintiff as wearing a black Adidas sweater with black and white stripes, and black Nike boots. Witness M.T. also stated that he talked to Primary Witness, his brother, prior to Witness M.T.'s statement about what he saw that night.

**B. Affidavit of Probable Cause**

Approximately four months after the homicide, Detective submitted an affidavit of probable cause, which an assistant district attorney pre-approved. See Reproduced Record (R.R.) at 50 (Affidavit of Probable Cause). An issuing authority signed the affidavit on July 28, 2011. Id. Detective's affidavit relied heavily on Primary Witness' statements and identification of Plaintiff as the shooter. However, the affidavit did not reference the 911 tape, in which Primary Witness gave a prior inconsistent statement when he told the operator that he did not see the shooter. The

3

day after Detective swore out the affidavit, the police arrested Plaintiff and charged him with first-degree murder.

### C. Trials; Acquittal

Almost two years later, and after five days of trial in May 2013, the first trial ended in a mistrial resulting from complications with a juror. The trial court scheduled a second trial for January 2014. Eight days before the second trial started, the prosecutor turned over to the defense the 911 radio conversation wherein Primary Witness can be heard stating that he did not see the shooter.

On the first day of the second trial, the defense impeached Primary Witness' testimony with the 911 tape, wherein the operator asked him if he saw the shooter and he clearly answered no. After three days of trial, the jury deliberated for about three and a half hours before finding Plaintiff not guilty on all charges. Overall, Plaintiff spent 30 months in jail as a result of the trials.

### D. Malicious Prosecution Complaint; Responsive Pleadings

In late August 2015, Plaintiff filed a complaint in civil court asserting a malicious prosecution claim against Detective. Plaintiff alleged Detective intentionally and recklessly caused a criminal prosecution to be initiated and continued against him. Plaintiff further alleged Detective acted with malice and furthered the prosecution of Plaintiff by providing false information, and by withholding truthful information, which if known, would have resulted in no prosecution. As a result, Plaintiff endured being arrested and twice tried for first

4

degree murder.  Plaintiff also sought punitive damages based on Detective's alleged outrageous, malicious and oppressive conduct.

In response to Plaintiff's complaint, Detective filed an answer and new matter denying Plaintiff's material allegations.  In new matter, Detective asserted local governmental immunity under the statutory provisions commonly referred to as the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa. C.S.  §§8541-8564.

### E. Detective's Motion for Summary Judgment

Following the close of pleadings and discovery, Detective filed a motion for summary judgment accompanied by a supporting memorandum of law with attached exhibits.  Detective asserted that in order to survive a motion for summary judgment in a malicious prosecution claim, Plaintiff must adduce evidence of each of the following three elements: the defendants instituted criminal proceedings against the plaintiff without probable cause; they did so with malice; and, the proceedings terminated in favor of the plaintiff.  Manley v. Fitzgerald, 997 A.2d 1235 (Pa. Cmwlth. 2010); Thomaskevitch v. Specialty Records Corp., 717 A.2d 30 (Pa. Cmwlth. 1998).  A malicious prosecution claim is an action that runs counter to the obvious policy of encouraging criminal proceedings against those who are apparently guilty.  Corrigan v. Cent. Tax Bureau of PA., Inc., 828 A.2d 502 (Pa. Cmwlth. 2003).  Pennsylvania courts have never regarded malicious prosecution claims with favor; therefore, they are difficult to maintain.  Id.

5

Probable cause, Detective posits, is a reasonable ground of suspicion supported by circumstances sufficient to warrant that an ordinary prudent person in the same situation could believe that a party is guilty of the offense charged. Turano v. Hunt, 631 A.2d 822 (Pa. Cmwlth. 1993); Thomaskevitch. Thus, if a reasonable person could have concluded, based on the officer's knowledge, that the alleged perpetrator committed a crime, then probable cause exists as a matter of law. Further, the criterion for probable cause is not equivalent to the proof beyond a reasonable doubt standard applicable in a criminal trial. Turano. As such, the absence of probable cause is not established solely by an adjudication of not guilty in the criminal proceedings. Thomaskevitch.

To that end, Detective continued, probable cause deals with probabilities, not absolutes. Commonwealth v. Weidenmoyer, 539 A.2d 1291 (Pa. 1988). In other words, probable cause is based on the probability of criminal activity, not a *prima facie* showing of it. Id.

If probable cause is shown to exist, an absolute defense against malicious prosecution is established. Turano. In such cases, the prosecutor's motive, whether malicious or otherwise, is immaterial. Id.

Moreover, the issue of whether probable cause existed for the criminal prosecution is a question of law for the trial judge, not a question of fact for the jury. Turano, 631 A.2d at 825 (citing Leonard v. Cole, 578 A.2d 53 (Pa. Cmwlth. 1990)). However, the existence of probable cause may be submitted to the jury when facts material to the issue of probable cause are disputed. Leonard (citing Kelley v. Gen.

Teamsters, Chauffeurs and Helpers, Local Union 249, 544 A.2d 940 (Pa. 1988)). In other words, if an issue exists as to whether the affiant was actually aware of a certain item of evidence, it is appropriate for the jury to resolve that issue. Id.

Detective further maintained that Pennsylvania courts routinely determine probable cause as a matter of law in malicious prosecution cases. See, e.g., Manley; Corrigan. Here, Detective argued that no reasonable jury could find an absence of probable cause for a first-degree murder charge. Primary Witness gave a statement to police that he was present when Decedent was shot to death. Primary Witness was able to identify Plaintiff by his Facebook photos as the person who shot Decedent. Witness M.T. identified Plaintiff as the man running away from the scene immediately after the shooting. Detective asserted this is precisely the kind of evidence a reasonable officer is entitled to rely upon in an affidavit of probable cause. Therefore, Detective argued probable cause to arrest Plaintiff for murder existed as a matter of law.

Detective anticipated that Plaintiff may point to additional steps that Detective could have taken to conduct a more perfect investigation. However, Detective argued, Pennsylvania law compels the conclusion that failing to take those steps does not make an affiant liable for malicious prosecution. In short, an imperfect investigation is not a sufficient ground for recovery in a malicious prosecution action. Turano. Here, Detective maintained, no reasonable jury could find that the probable cause created by Primary Witness' statement that he was present at the shooting, and his identification of Plaintiff as the shooter, along with

Witness M.T.'s identification of Plaintiff as the person running from the scene, could be vitiated by any of the alleged imperfections in his investigation.

Detective also argued there was no record evidence to support a claim of willful misconduct, which would exclude him from immunity under the Tort Claims Act. Pursuant to 42 Pa. C.S. §8550, local government employees lose their immunity for acts within the scope of their employment when their conduct amounts to a crime, actual fraud, actual malice or willful misconduct.

Citing Renk v. City of Pittsburgh, 641 A.2d 289 (Pa. 1994), Detective argued that in order to find willful misconduct on the part of a police officer, the Tort Claims Act requires a showing of a higher standard of willfulness. To that end, it requires a showing of the officer's intention to do what he knows to be wrong. In other words, willful misconduct requires not only an intention to commit the act and desire the result, it requires an understanding that the officer knew the actions were illegal and that he chose to take the actions anyway. Sameric Corp. of Delaware v. Phila., 142 F.3d 582 (3d Cir. 1998). Here, Detective asserted, there was no evidence of such willful conduct.

## F. Plaintiff's Response

In response, Plaintiff filed an answer to Detective's motion for summary judgment and a supporting memorandum of law with exhibits. Plaintiff requested that the trial court deny Detective's motion for summary judgment because there were genuine issues of material fact as to whether Detective intentionally suppressed critical exculpatory evidence.

In his memorandum, Plaintiff set forth a different version of the facts. He claimed he was at his job at the Philadelphia Airport on the day in question. Plaintiff asserted that he did play basketball frequently at the Rec Center and that he had a set team of family and friends, and that he did not play a pickup game with Decedent. Plaintiff further asserted he did not have any arguments with anyone that day.

Plaintiff also asserted that Primary Witness clearly stated in the 911 tape that he did not see who shot Decedent. Police radio calls also confirm that Primary Witness could not provide a description of the shooter. Primary Witness arrived at the Police Department's Homicide Division at 9: 00 p.m., about an hour after the shooting. The police placed him in a locked interrogation room. Seventeen hours later, Primary Witness picked out Plaintiff's picture on Facebook.

Plaintiff additionally asserted at some point prior to the first trial in May 2013, an individual named Sean Jarmon was instructed by a judge to accompany Detective, Police Officer Forbes, and an assistant district attorney into a separate room at the courthouse. Officer Forbes told Jarmon that they knew Plaintiff did not commit the murder, but that he was going to do life unless Jarmon told them who killed Decedent. When asked about this encounter, Detective did not deny it, but he could not recall what was said.

Plaintiff pointed out various other alleged shortcomings and inconsistencies in Detective's investigation, such as failing to record much of Primary Witness' statements at the police station, and failing to comply with

9

Philadelphia Police Department directives regarding paperwork and reports in investigations.

Plaintiff also presented two legal arguments as to probable cause. First, Plaintiff argued Detective's investigation was woefully inadequate and resulted in Plaintiff's arrest without probable cause. In particular, Plaintiff asserted Detective withheld from his defense attorney the 911 and police radio tapes in which Primary Witness stated he did not see the shooter. In Brady v. Maryland, 373 U.S. 83 (1963), the U.S. Supreme Court held that suppression by the prosecution of evidence favorable to an accused violated due process where the evidence is material to either guilt or punishment, irrespective of the good faith or bad faith of the prosecution. Plaintiff further argued the Brady obligation to provide exculpatory evidence extends to exculpatory evidence in police agency files. See Commonwealth v. Burke, 781 A.2d 1136 (Pa. 2001) (in light of Kyles v. Whitley, 514 U.S. 419 (1995) the fact that Brady material was in the possession of the police rather than the prosecutor is irrelevant to the Commonwealth's duties under Brady).

Here, Detective did not mention the 911 tape in his affidavit of probable cause or disclose it during the first trial. Therefore, Plaintiff argued, viewing the evidence in a light most favorable to Plaintiff, a genuine issue of material fact exists as to whether Detective purposely and intentionally suppressed critical and exculpatory evidence that would have vitiated probable cause for Plaintiff's arrest for first-degree murder.

Second, Plaintiff argued that a genuine issue of material fact for the jury existed as to whether Detective's failure to properly investigate the case vitiated

10

probable cause. Plaintiff asserted Detective violated numerous directives in failing to create, gather and maintain critical paperwork. In addition, Plaintiff asserted that Detective revealed he was wedded to the notion, that someone from the Blumberg projects and a member of the Waterboyz gang, shot Decedent in retaliation for an earlier shooting of a Waterboyz gang member.

Citing several federal appellate decisions, Plaintiff argued Detective's failure to properly investigate the case negated probable cause for his arrest. See, e.g., Clipper v. Takoma Park, Maryland, 876 F.2d 17 (4th Cir. 1989) (officer lacked probable cause to arrest a suspect in a bank robbery case where officers failed to interview individuals who would have established the suspect's alibi and failed to look at surveillance film from the bank); Montgomery v. DeSimone, 159 F.3d 120 (3d Cir. 1988) (a jury could reasonably conclude that the officer's conduct in failing to investigate before acting was unreasonable).

Plaintiff also cited Combs v. Blowes (Pa. Cmwlth., No. 1561 C.D. 2013, filed February 17, 2015) 2015 WL 5162166 (unreported), a memorandum decision of this Court affirming a trial court's decision awarding civil damages for a malicious prosecution. In Combs, we reasoned:

> Probable cause does not exist where there is evidence of the unreliability of the witness whose statement is relied upon, where exculpatory evidence is disregarded, and where material facts are withheld or misrepresented; however, a police officer has no duty to investigate exculpatory evidence that is not readily available, speculative information provided by the accused, and the statements of a single credible witness may serve as sufficient evidence of probable cause.

11

<u>Combs</u>, Maj. Slip Op., at 10-11, 2015 WL 5162166 at \*5.

Based upon the case law cited, Plaintiff argued, and viewing the evidence in a light most favorable to himself as the non-moving party, a genuine issue of material fact for the jury exists as to whether Detective failed to properly investigate the case. If so, this could vitiate probable cause.

Third, Plaintiff argued Detective acted with willful misconduct, which is defined by the Pennsylvania Supreme Court as conduct wherein the officer knew his actions were illegal and that he chose to take the actions anyway. <u>Renk</u>. Here, Plaintiff asserted that Detective's violation of Philadelphia Police Department directives concerning conducting a proper investigation, preparing and filing paperwork, and preserving evidence, which is tantamount to the spoliation of evidence, establish Detective knowingly disregarded his duties. More importantly, Detective intentionally suppressed exculpatory evidence in the nature of the 911 tape and police radio calls indicating Primary Witness did not see the shooter.

Therefore, Plaintiff argued, there was sufficient evidence for a jury to find that Detective understood that the actions he intended to take would result in the arrest of Plaintiff without probable cause. Consequently, Detective's conduct constituted willful misconduct and Plaintiff's malicious prosecution claim is not barred by the Tort Claims Act.

**G. Trial Court's Decision**

In its opinion in support of its order granting summary judgment for Detective, the trial court observed that the issue of whether certain facts constitute

12

probable cause must be determined by the court; however, whether such facts exist is for the jury to determine. Bruff v. Kendrick, 21 Pa. Super. 468 (Pa. Super. 1902). Here, the trial court noted Detective interviewed various witnesses, exchanged information with other police officers working on the case, formed a shooting timeline between the two groups, and assessed the validity of the evidence before him. Nonetheless, Detective ultimately relied on the eyewitness accounts of Primary Witness and Witness M.T.

The trial court reasoned that Plaintiff failed to offer evidence showing that Detective lacked probable cause to initiate the criminal proceedings against him. Detective relied on two eyewitnesses to the events surrounding Decedent's murder. Primary Witness testified he was walking next to Decedent when he was shot twice. Witness M.T. testified he saw Plaintiff running from the scene.

Although Primary Witness did not make the identification during his 911 call, and Witness M.T. spoke with his brother, Primary Witness, prior to his statements to police, the trial court reasoned these facts did not defeat probable cause. Rather, they are matters that go to the weight of the evidence at trial, not to a determination of whether probable cause exists during the investigation. See Tr. Ct., Slip Op., 5/4/17, at 9.

The trial court further noted that the information Primary Witness and Witness M.T. provided regarding the shooting was sufficient for Detective to proceed in the criminal case. Id. Citing Turano, the trial court determined Detective, based on the evidence obtained during his investigation, established a reasonable

13

ground of suspicion supported by circumstances sufficient to warrant that an ordinary prudent person in the same situation could believe that a party is guilty of the offense charged.

Relying on Turano, the trial court concluded Detective had probable cause to believe Plaintiff committed the crime. In Turano, the trial court noted, the appellant argued the officers lacked probable cause because they failed to perform the type of investigation which would allow a reasonable, honest, and intelligent individual to believe the appellant was guilty of a crime. This Court, however, determined in Turano that the officer had sufficient reason to believe the victim's identification of the perpetrator was genuine and thus provided a reasonable basis for the prosecution.

The trial court also determined Plaintiff failed to present sufficient evidence of malice. The trial court reasoned that Plaintiff cannot create a dispute of material fact by mere allegations of malice. The trial court rejected Plaintiff's argument that Detective acted with malice in withholding the 911 tape. To that end, the court observed that Plaintiff made no offer of proof that Detective maintained possession of the 911 recording or that he intentionally withheld the 911 recordings from the District Attorney's office. Tr. Ct., Slip Op., at 11-12. Consequently, the trial court concluded that Plaintiff's failure to offer any evidence that Detective intentionally withheld the 911 tapes, by itself, constituted a sufficient reason for granting summary judgment. Plaintiff appeals.[2]

---

[2] This Court's standard of review of a trial court's order granting summary judgment is *de novo* and our scope of review is plenary. Pentlong Corp. v. GLS Capital, Inc., 72 A.3d 818 (Pa.

14

## II. Discussion

Plaintiff contends the trial court erred in granting summary judgment because there were genuine issues of material fact where: (1) Detective intentionally omitted exculpatory facts from the affidavit of probable cause, including the fact that the sole eyewitness to the actual shooting told the 911 dispatcher that he did not see the shooter; (2) Detective's failure to adequately investigate the shooting vitiated probable cause; and, (3) Detective's conduct, including the suppression of critical exculpatory evidence, indicated that he acted with malice and engaged in willful misconduct in instituting criminal charges against Plaintiff.

### A. Intentional Omission of Exculpatory Facts

### 1. Argument

On appeal, Plaintiff first contends Detective's intentional omission and suppression of critical exculpatory evidence vitiated probable cause for Plaintiff's arrest. Plaintiff asserts that whether probable cause exists is a jury question, except in the rare circumstances where credibility is not an issue. Therefore, where there are material facts in dispute, the issue of probable cause is one for the jury to decide. Daley v. John Wannamaker, Inc., 464 A.2d 355, 357-58 (Pa. Super. 1983).

---

Cmwlth. 2013). Under this standard, we may reverse a trial court's order only for an abuse of discretion or an error of law. Id. To that end, summary judgment is appropriate only when, after reviewing the record in a light most favorable to the non-moving party, and resolving any doubt regarding issues of fact against the moving party, it is clear that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Id. Further, when a motion for summary judgment is made and supported by the record, the adverse party may not rest only on mere allegations or denials in his pleadings. Rather, he must set forth in his response by affidavits, or as otherwise provided, specific facts in dispute. Kniaz v. Benton Borough, 642 A.2d 551 (Pa. Cmwlth. 1994).

Plaintiff asserts the burden was on Detective to establish the absence of any genuine issues of material fact. In addition, Plaintiff argues that oral testimony, either by affidavit or deposition, even if uncontradicted, is insufficient to establish the absence of a genuine issue of material fact. Penn Center House, Inc. v. Hoffman, 553 A.2d 900 (Pa. 1989) (citing Nanty-Glo v. Am. Surety Co., 163 A. 523 (Pa. 1932)). By accepting, Detective's testimony as true, Plaintiff contends the trial court employed the wrong standard of review. Id.

Turning to the merits, Plaintiff asserts an affiant may not make material falsehoods or material omissions in swearing out an affidavit of probable cause. Franks v. Delaware, 438 U.S. 154 (1978). Where omissions are the basis for a challenge to an affidavit of probable cause, the following test is applied: (1) whether the officer withheld a highly relevant fact within his knowledge (where any reasonable person would have known that this was the kind of thing the judge would wish to know); and, (2) whether the affidavit would have provided probable cause if it had contained a disclosure of the omitted information. Commonwealth v. Taylor, 850 A.2d 684 (Pa. Super. 2004). Therefore, Plaintiff asserts, it is necessary to concentrate on two elements: first, whether the officer, acting with a reckless disregard for the truth, made false statements or omissions that created a falsehood in applying for a warrant, and second, whether those assertions or omissions were material or necessary to the finding of probable cause. See Dempsey v. Bucknell Univ., 834 F.3d 457 (3d Cir. 2016).

Citing Andrews v. Scuilli, 853 F.3d 690 (3d Cir. 2017), Plaintiff reconstructs an affidavit in the present case, which includes all the alleged shortcomings and omissions in Detective's investigation. See Appellant's Br. at 22-

16

24. In so doing, Plaintiff asserts, a reasonable and neutral magistrate would never have found probable cause. To that end, a truthful affidavit would have indicated that, in the 911 tape, Primary Witness indicated he did not see the shooter and could not give a description of him, even though he just played basketball with him. Further, Primary Witness did not identify Plaintiff by a Facebook picture until he spent 17 consecutive hours in a locked room at the police station.

In Scuilli, the Third Circuit noted there were substantial contradictions between the omitted facts and those included in the affidavit. Here, Plaintiff argues, the fact that Primary Witness could not identify the shooter in the 911 tape casts substantial doubt on his reliability in making the later positive identification at the police station. Plaintiff asserts Primary Witness' 911 statements would have been admissible as excited utterances with an earmark of reliability because the declarant did not have time to make up a story.

In short, Plaintiff argues that Detective's actions in hiding these critical facts from the magistrate were intentional and purposeful, and effectively usurped the role of a neutral magistrate. Therefore, Plaintiff asserts, viewing the evidence in a light most favorable to Plaintiff as the non-moving party, there are genuine issues of material fact as to whether Detective suppressed critical, exculpatory evidence in the 911 tape which would have vitiated probable cause.

**2. Analysis**

Plaintiff first contends Detective's intentional omission and suppression of critical exculpatory evidence, especially the 911 tape and related police calls, vitiated probable cause for Plaintiff's arrest. We disagree.

As discussed above, the elements of malicious prosecution are: institution of criminal proceedings against the plaintiff without probable cause, and with malice; and, that the criminal proceedings were terminated in the plaintiff's favor. Manley; Turano. A showing that probable cause exists is an absolute defense to a malicious prosecution action. Turano. "In cases of malicious prosecution, it is beyond cavil that the question of want of probable cause for the criminal prosecution that gave rise to the civil action is a question not for the jury but exclusively for the court." Id. at 825. "However, the question of the existence of probable cause may be submitted to the jury where facts material to the issue are in controversy." Id. To that end, it is only when there is a variance in the testimony that the jury must be utilized to determine factual issues. Daley. Here, Plaintiff did not specify what facts were in dispute or refute the evidence cited by Detective. Rather, Plaintiff argues there were other facts that should have been considered. Consequently, we reject Plaintiff's initial contention that the existence of probable cause itself in this case constitutes a factual question for the jury. Manley; Turano.

As also noted above, probable cause is a reasonable ground of suspicion supported by circumstances sufficient to warrant that an ordinary prudent person in the same situation could believe a party is guilty of the offense charged. Turano. In other words, "[p]robable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonable trustworthy information are

18

sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." Commonwealth v. Thomas, 292 A.2d 352, 357 (Pa. 1972) (emphasis added).

In Pennsylvania, the test for whether probable cause exists for the issuance of an arrest warrant is the "totality of the circumstances." Commonwealth v. Rogers, 615 A.2d 55, 62 (Pa. Super. 1992). In determining whether probable cause exists, a magistrate is not required to find a showing of criminal activity; the mere probability of such criminal activity is sufficient for probable cause. Id. A trial court's determination of probable cause is accorded the utmost deference on appeal. Id.

Here, Detective's key evidence supporting probable cause is Primary Witness' statement and his identification of Plaintiff based on Facebook photos. Further, Witness M.T.'s identification of Plaintiff corroborates Primary Witness' identification. Nonetheless, probable cause may rest upon the statement of a single eyewitness. Turano. Moreover, Pennsylvania law presumes that voluntary statements from a witness are trustworthy. Weidenmoyer.

In addition, Primary Witness, a close friend of Decedent for about 12 years, had reason to help the police find Decedent's killer. He saw the shooter earlier that evening on the basketball court and observed the shooter's clothing. Primary Witness observed the shooter's clothing as he left the Rec Center. He recognized the same clothing on the street when the shooter killed Decedent.

19

Moreover, Primary Witness testified at trial that when he gave the statement to the detectives during his questioning immediately after the murder, he told them he was 100% sure that Plaintiff was the shooter. See Jury Trial, Notes of Testimony (N.T.), 5/15/13 at 130-31; R.R. at 101a. Primary Witness felt the same way when he testified at trial. Id.

Further, we discern no error in the trial court's determination that Primary Witness' initial response on the 911 tape, that he did not see the shooter, goes to the weight of the evidence and does not defeat probable cause. Given the extreme circumstances facing Primary Witness at the time of the shooting, including the shooting death of his friend and fear of retaliation by gang members, Detective could reasonably conclude the statements at the police station were more reliable. For probable cause purposes, it is reasonable for an experienced police officer to assess an individual's demeanor, find his story credible, and rely on his identification of the perpetrator. See Sharrar v. Felsing, 128 F.3d 810 (3d Cir. 1997), abrogated on other grounds as recognized by Curley v. Klem, 499 F.3d 199 (3d Cir. 2007) (police officer, in establishing probable cause, reasonably relied on victim, who initially reported someone else assaulted her but later changed her story and stated her husband assaulted her).

Here, Detective testified by deposition that Primary Witness' statements on the 911 tape did not alter his opinion of Primary Witness' later statements and identification of Plaintiff. See Dep. of Det. Peters, 12/7/16, at 80; R.R. at 155. People often, in the heat of the moment, do not want to get involved or be overheard talking to police officers for different reasons. Id.

20

Consequently, the trial court properly determined that omission of the 911 tape and police calls at the time of the incident did not vitiate probable cause in the criminal case.

## B. Failure to Thoroughly Investigate

### 1. Argument

Plaintiff further contends that Detective's failure to thoroughly investigate the matter vitiated probable cause. Plaintiff cites such things as Witness M.T.'s identification of Plaintiff as the shooter after talking to Primary Witness, his brother. Further, Witness K.H. stated that Plaintiff was not the shooter and provided a different description of the shooter. Witness K.H. saw the shooter walking a pit bull in the neighborhood. Witness K.H. also identified someone named Dougy as a possible associate of the shooter. However, Detective never pursued Witness K.H.'s claim that the shooter knew someone named Dougy. Further, Detective did not show Witness K.H. any photos of Plaintiff.

Moreover, Detective did not investigate Plaintiff's or Primary Witness' cell phones. Also, Detective did not investigate anyone at the Rec Center where Plaintiff and Decedent played basketball and exchanged words.

Plaintiff also asserts that Detective did not disclose the fact that he was practically wedded to the belief that Decedent was shot in retaliation for the murder of Kendall White, a member of the Waterboyz, a Blumburg project gang of which Plaintiff was a member.

21

In addition, the affidavit does not disclose that Detective violated numerous Department directives by failing to gather, create and maintain critical paperwork.

In light of the contradictory statements made by Primary Witness, which could raise an issue as to the reliability of Primary Witness' testimony, Plaintiff asserts Detective's failure to thoroughly investigate the case becomes more significant. As support, Plaintiff cites Arpin v. Santa Clara Transportation Agency, 261 F.3d 912 (9th. Cir. 2001), where the Ninth Circuit reasoned that in establishing probable cause for a warrantless misdemeanor arrest, an officer may not rely solely on the claim of a citizen witness, but must investigate the basis of the witness' knowledge or interview other witnesses.

Therefore, Plaintiff argues, viewing the evidence in a light most favorable to Plaintiff as the non-moving party, there are genuine issues of material fact as to whether Detective's failure to thoroughly investigate the facts in the case affect Detective's credibility and veracity regarding the accuracy of Primary Witness' identification of Plaintiff.

## 2. Analysis

Plaintiff contends that Detective's failure to thoroughly investigate the matter vitiated probable cause. We disagree. An imperfect criminal investigation does not overcome the existence of probable cause to prosecute. Turano. The mere

fact that a police investigation could have been more thorough does not vitiate probable cause. Mitchell v. Obenski, 134 F. Appx. 548 (3d Cir. 2005). Moreover, an officer is not required to undertake an exhaustive investigation to validate the probable cause that, in his mind, already exists. Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782 (3d Cir. 2000).

Here, Plaintiff points out a number of factual omissions from the affidavit that he contends negate probable cause. Where omissions are the basis for a challenge to an affidavit of probable cause in an arrest warrant, the following test applies: (1) whether the officer withheld a highly relevant fact within his knowledge, where any reasonable person would have known that this was the kind of thing the judge would wish to know; and, (2) whether the affidavit would have provided probable cause if it had contained a disclosure of the omitted information. Taylor.

After reviewing the numerous alleged material omissions Plaintiff highlights, we conclude that Detective's affidavit would have provided probable cause based on Primary Witness' statements even if the affidavit contained the other information Plaintiff highlights.

For example, Detective omitted Witness K.H.'s eyewitness statement and description of the shooter. Witness K.H. described the shooter from across the street as a person with caramel complexion, short hair, light beard. R.R. at 171. Primary Witness described the shooter as 5'6'' to 5'7'', dark skinned, heavy set about 210-215, bearded, mustache, with a tattoo on his chest that says "Money over …." R.R. at 48. These descriptions are not so incompatible as to prompt a

23

reasonable person to doubt Plaintiff's guilt based on Witness K.H's somewhat different description.

Moreover, the other information Witness K.H. provided, including a statement that the shooter owned a pit bull and associated with someone named Dougy, is vague and uninformative as to either Plaintiff's guilt or innocence, or Primary Witness' credibility.

In addition, Detective observed that Witness K.H's statements that Decedent was alone when shot at the Rec Center were inconsistent with security camera footage from a nearby store that confirmed Primary Witness' statement that he was walking with Decedent moments before the shooting.

Further, even though Witness M.T. talked with Primary Witness, his brother, before making a statement to police, this does not prove Witness M.T. lied to police or was incompetent.

In short, none of the alleged omissions Plaintiff highlights would compel a reasonable magistrate or judge to disregard Primary Witness' eyewitness identification of Plaintiff as the shooter. Therefore, applying the test for material omissions in Taylor, we conclude the affidavit would still provide probable cause for Plaintiff's arrest even with the omitted circumstances included. Consequently, guided by our decision in Turano, we discern no error in the trial court's determination that Primary Witness' eyewitness identification was sufficient to

establish probable cause and defeat Plaintiff's claims that Detective's inadequate investigation vitiated probable cause.

## C. Willful Misconduct

### 1. Argument

Plaintiff also contends the trial court erred in determining he failed to offer any evidence of malice in his malicious prosecution claim. Malice has been defined as "'ill will in the sense of spite, lack of belief by the actor himself in propriety of the prosecution, or its use for an extraneous improper purpose.'" Lippay v. Christos, 996 F.2d 1490, 1502 (3d Cir. 1993) (citation omitted). Plaintiff further asserts "[m]alice may be inferred from the absence of probable cause." Id. Therefore, malice is not limited to motives of hatred or ill will, but may be inferred from a reckless and oppressive disregard of a plaintiff's rights. Id.

In addition, Plaintiff argues the trial court did not address Detective's contention that he was immune from suit under the Tort Claims Act. To that end, Plaintiff posits, a police officer's immunity, as a municipal employee, is abrogated when "it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct." 42 Pa. C.S. §8550.

Willful misconduct has been defined by the Pennsylvania Supreme Court as conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied. Renk. Here, Plaintiff asserts there are genuine issues of material fact regarding Detective's version of the investigation. Plaintiff further asserts the record

25

establishes that Detective knew the consequences of not properly doing his job could result in the arrest of the wrong person with all its concomitant consequences. Also, the repeated violation of Philadelphia Police Directives regarding the conduct of a proper investigation show that Detective knowingly disregarded his duties, which is tantamount to spoliation of the evidence.

Further, Plaintiff argues that Detective's participation in the interview of Sean Jarmon, where Officer Forbes stated to Jarmon that he knew Plaintiff did not commit the crime, but that he would prosecute him anyway unless Jarmon provided the identity of the actual shooter, could support a finding of actual malice. Finally, Plaintiff asserts a genuine issue of material fact exists as to whether Detective intentionally omitted the exculpatory 911 tape from the affidavit of probable cause. Thus, Plaintiff argues, a jury issue exists as to willful misconduct.

## 2. Analysis

In his last argument, Plaintiff contends the trial court erred in determining that he failed to offer any evidence of malice in his malicious prosecution claim. Plaintiff asserts malice is not limited to motives of hatred or ill will, but may be inferred from a reckless and oppressive disregard of a plaintiff's rights. See Hugee v. Pa. R. Co., 101 A.2d 740 (Pa. 1954). Initially, we note that where, as here, probable cause is shown to exist, an absolute defense is established against an action for malicious prosecution. Turano. Thus, where probable cause exists, the prosecutor's motive, malicious or otherwise, is immaterial. Id.

Nevertheless, Plaintiff argues that Detective's disregard of Philadelphia Police Department directives regarding a proper investigation, the preparation and filing of paperwork, and preserving evidence establish that Detective knew the consequences of not doing his job properly could result in the arrest of the wrong person, with all its concomitant consequences. Therefore, Plaintiff asserts a genuine issue of fact exists as to whether Detective's conduct during the investigation rose to the level of willful misconduct or actual malice. Renk.

We disagree. The trial court properly determined Plaintiff failed to provide *prima facie* evidence that Detective acted with malice or engaged in willful misconduct in prosecuting Plaintiff.

First, the alleged conversation with a potential witness, Sean Jarmon, during which a different police officer, Officer Forbes, told Jarmon that he knew Plaintiff did not commit the murder, but that they would prosecute him anyway unless Jarmon told them who did it, took place long after Plaintiff's arrest. As Detective asserts, police sometimes mislead suspects in order to obtain useful information. Also, Plaintiff presented no evidence, such as an affidavit from Jarmon, substantiating these allegations. A party opposing summary judgment cannot rest on mere allegations. Pa. R.C.P. No. 1035.3; Krauss v. Trane U.S. Inc., 104 A.3d 556 (Pa. Super. 2014) (a party cannot survive summary judgment if a jury must rely on speculation as to a material fact).

27

In addition, because probable cause is determined at the time the arrest is sought, this information would have little probative value as to Detective's state of mind when preparing the affidavit of probable cause.

Second, Plaintiff did not offer to prove that Detective was responsible for the District Attorney's failure to produce the 911 tape during the first trial. Detective testified by deposition that he placed the 911 tape in the case file, which went to the District Attorney after the preliminary hearing. Dep. of Det. Peters, 12/7/16, at 63-65; R.R. at 153-54. According to protocol, after a preliminary hearing, administrative personnel transfer the file, including the 911 tape, to the District Attorney's Office. Id. Ultimately, the file is returned to the police. Id. Plaintiff offers no evidence disputing this testimony. Consequently, Plaintiff presented no evidence showing Detective intentionally withheld the 911 tape.

Finally, Plaintiff's unsupported and speculative allegations that Detective violated Philadelphia Police Department directives regarding a proper investigation, the preparation and filing of paperwork, and preserving and maintaining evidence, are insufficient to present a genuine issue of material fact as to whether Detective knowingly, or with reckless disregard as to Plaintiff's innocence, swore out an affidavit of probable cause for his arrest on murder charges. Regardless, as noted above, having determined probable cause existed for Plaintiff's arrest, Plaintiff's malicious prosecution claim fails. Turano.

### III. Conclusion

For the above reasons, we discern no error by the trial court in granting summary judgment in favor of Detective. The trial court properly determined

Plaintiff failed to offer evidence sufficient to create a genuine issue of material fact as the absence of probable cause for Detective's affidavit or that Detective acted with malice toward Plaintiff in instituting criminal proceedings against him. <u>Thomaskevitch</u>; <u>Turano</u>.  Accordingly, we affirm.


ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Hall,                          :
                    Appellant         :
                                      :     No. 248 C.D. 2017
            v.                        :
                                      :
Det. Brian Peters                     :

# **O R D E R**

**AND NOW**, this 30th day of November, 2017, for the reasons stated in the foregoing opinion, the order of the Court of Common Pleas of Philadelphia County is **AFFIRMED**.

_____
ROBERT SIMPSON, Judge